UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

DEVON BRISTOL,

                  Petitioner,

          v.

JOSEPH NOETH, *Superintendent of Attica Correctional Facility*,

                  Respondent.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-4220 (MKB)

MARGO K. BRODIE, United States District Judge:

I.    Background ................................................................................................. 4

   a.   Factual background ................................................................................. 4

      i.   The underlying crimes ....................................................................... 4

      i.   The state felony complaint ................................................................. 7

      ii.  Petitioner's arrest and arraignment .................................................. 7

      iii. Petitioner's trial ................................................................................ 8

          1.   Voir dire process ........................................................................ 8

          2.   Summation ................................................................................... 9

          3.   Verdict ....................................................................................... 10

          4.   Sentence ..................................................................................... 10

   b.   Procedural background ......................................................................... 10

      i.   Direct appeal ................................................................................... 10

      ii.  Denial of leave to appeal Direct Appeal ......................................... 11

      iii. Federal habeas petition ................................................................... 11

      iv. 440 Motion ...................................................................................... 13

      v.  *Coram nobis* petition ....................................................................... 14

      vi. Reopening of federal habeas Petition ............................................. 15

   c.   R&R ...................................................................................................... 16

II.   Discussion ................................................................................................. 17

   a.   Standards of review .............................................................................. 17

      i.   Habeas petition ................................................................................ 17

ii. R&R ........................................................................................................... 20

b. Unopposed portions of the R&R................................................................ 22

c. Petitioner's objections to the R&R ........................................................... 23

d. Arguments in the Petition ......................................................................... 26

i. *Voir dire* alleged error.......................................................................... 29

ii. Prosecutorial alleged misconduct during summation ................................. 34

e. New arguments not raised in the Petition .................................................. 43

i. Lack of grand jury indictment................................................................ 45

1. Procedural default .............................................................................. 47

2. Merits ................................................................................................ 53

ii. Ineffective assistance of trial counsel ..................................................... 55

iii. Ineffective assistance of appellate counsel .............................................. 61

f. Certificate of appealability........................................................................ 64

III. Conclusion ....................................................................................................... 67

Petitioner Devon Bristol, proceeding *pro se* and currently incarcerated at Cayuga Correctional Facility in Moravia, New York, filed the above-captioned petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2554 on June 29, 2017,[1] alleging that he is being held in state custody in violation of his federal constitutional rights. (Pet. For Writ of Habeas Corpus ("Pet."), Docket Entry Nos. 1, 1-1, 1-2, 1-3.[2]) Petitioner's claims arise from a judgment of conviction following a jury trial in the Supreme Court of New York State, Queens

---

[1] Petitioner originally filed his Petition in the Southern District of New York but it was subsequently transferred to this Court on July 17, 2017. (*See* Docket Entry Nos. 1, 2, 3.) The Court stayed the case on November 10, 2020 and held the Petition in abeyance until Petitioner exhausted his state-court remedies. (*See* Order dated Nov. 10, 2020; Order dated July 16, 2021.) On April 29, 2025, pursuant to a letter filed by Petitioner informing the Court that his motion pursuant to New York Criminal Procedural Law ("C.P.L.") § 440.10 ("440 Motion") was denied by the Appellate Division, (*see* Pet'r's Ltr. dated Apr. 17, 2025, Docket Entry No. 34), the Court reopened the case, (*see* Docket Entry dated Apr. 29, 2025). *See* procedural background discussion *infra* Section I.b.

[2] Although the Petition was filed in four parts, at Docket Entry No. 1, 1-1, 1-2, and 1-3, the Court refers to the page numbers of the cumulative Petition itself, not those assigned by the electronic case filing system.

County (the "Trial Court"), on charges of (1) four counts of robbery in the first degree (New York Penal Law ("N.Y.P.L.") §§ 160.15(2) and (4)); (2) two counts of robbery in the second degree (N.Y.P.L. § 160.10(1)); (3) two counts of criminal possession of a weapon in the third degree (N.Y.P.L. § 265.02(1)); and (4) two counts of criminal possession of stolen property in the fifth degree (N.Y.P.L. § 165.40). (Pet. 2.) Petitioner challenges his conviction on the following grounds: (1) he was denied constitutional and statutory rights, including his right to a fair trial, because the prosecutor made "inflammatory" comments during her closing argument; (2) he was denied his right to a "jury selected from all competent prospective ju[r]ors" because the Trial Court "abdicated its judicial function and committed a mode of proceedings error when it permitted prospective jurors to excuse themselves from jury service for unspecified 'pressing business or personal reasons' without making any inquiry"; and (3) his sentence was "unduly harsh and excessive." (*Id.* at 3, 6, 8, 9.)

On May 22, 2019, the Court referred the Petition to former Magistrate Judge Lois Bloom for a report and recommendation, (Order dated May 22, 2019), and, on December 19, 2019, Judge Bloom recommended that the Court deny the Petition in its entirety (the "R&R"), (R&R 1, 14–15, Docket Entry No. 10). On June 2, 2020, Petitioner filed his objections to the R&R, which Respondent opposed.[3] For the reasons set forth below, the Court denies the Petition.

---

[3] (Pet'r's Objs. to R&R ("Objs."), Docket Entry No. 15; Resp.'s Objs. Resp. to R&R ("Objs. Resp."), Docket Entry No. 16; Resp.'s Supp. Objection to R&R ("Supp. Objs. Resp."), Docket Entry No. 38.)

## I.    Background

### a.    Factual background

#### i.    The underlying crimes

According to the felony complaint and sworn depositions[4] of Police Officer Nigel Peart,

between October 20, 2011 at approximately 11:15 P.M., and October 21, 2011 at approximately

12:47 A.M., in front of 69-15 Forest Avenue, Flushing, New York 11385, Petitioner and his

codefendant, Davon Beckford, followed Jose Mancebo for several blocks after he exited a train.[5]

---

[4] Respondent filed Petitioner's state court record, including trial transcripts, on November 8, 2017 and supplemented that filing on March 9, 2026. (State Court Filings, appended to State Court Record, Docket Entry No. 8-1; State Court Transcripts, appended to State Court Record, Docket Entry No. 8-2; Supp. State Court Filings, appended to Supp. Objs. Resp., Docket Entry No. 38-2.) Respondent consecutively numbered the filed State Court Record and Supp. State Court Filings, starting with "SR," and the Court refers to this pagination when referring to any of the state court record. The State Court Transcripts encompass transcripts from pre-trial hearings, jury selection, numerous days of trial, and sentencing. The Court describes each transcript descriptively and refers to the portable document format ("PDF") page numbers of the State Court Transcripts filing, since Respondent did not consecutively paginate this document.

[5] Petitioner objects to Judge Bloom's reliance on the Trial Court transcripts from Petitioner's trial, arguing Judge Bloom "relied on [ ] the intentional chronic deceit upon the [c]ourt by the prosecutor." (Objs. 3.) Despite this objection, the Petitioner also relies upon the Trial Court transcripts in his objections to the Petition. (*See id.* at 14, 15.) Petitioner cannot sustain his argument while simultaneously relying on the Trial Court transcripts as his actions contradict his objection.

Regardless, the Court attempts to recite the facts solely relying on the sworn felony complaints and depositions, which Petitioner himself submitted with his objections, and Petitioner's statements of the facts found in his relevant filings across his various motions in state court and with this Court. Where unable to do so, the Court relies on the Trial Court transcripts as these documents completely encompass the Trial Court's proceedings, Petitioner does not allege that the Trial Court transcripts incorrectly or inconsistently reflect the proceedings, and the transcripts are quoted and relied on by both parties. To the extent Petitioner's trial counsel objected to anything during the trial, including any statements made by the prosecutor, the Court notes those objections. *See White v. White*, No. 12-CV-200, 2012 WL 3041660, at *9–10 (S.D.N.Y. July 20, 2012) (considering the state court documents because the petitioner "was a party to all of the state court proceedings and [was] intimately familiar with them," but limited its consideration "to observing that proceedings occurred, arguments were raised and decided, and judgments entered" and not to "the truth of any factual assertions made

4

(Felony Complaint Q11660224, Q11660222 ("Criminal Complaint I"), annexed to Objs. in Ex. A.)  Petitioner approached Mancebo with a gun in his hand, while Beckford approached from behind.  (*Id.*)  Petitioner and Beckford stated, "you know what the deal is," and took Mancebo's cellphone, headphones, and money.  (*Id.*)  Officer Peart responded to a 911 call by Mancebo between approximately 11:00 and 11:30 P.M. on October 20, 2011.  (Pet'r's Mem. in Supp. of Direct Appeal SR 009, appended in State Court Filings SR 001–038.)  After "an unsuccessful 30- to 40-minute canvas of the area," Officer Peart took Mancebo to the precinct.  (*Id.*)

According to the felony complaint and sworn deposition of Police Officer Fateemah Hopson, on that same night, between approximately 12:20 A.M. and 12:23 A.M., at the intersection of George Street and Myrtle Avenue, Petitioner and Beckford approached Ali Aissouili, who was sitting on a bench.  (Felony Complaints Q11660219, Q11660220 ("Criminal Complaint II," and together with Criminal Complaint I, the "Criminal Complaints"), annexed to Objs. in Ex. A.)  Petitioner held a gun to Aissouili's head and demanded his laptop, phone, and money.  (*Id.*)  Aissouili gave Petitioner and Beckford his laptop and phone.  (*Id.*)  Officer Hopson was flagged down by Aissouili who reported that he had just been robbed and pointed

---

therein"), *report and recommendation adopted*, 2013 WL 1340145 (S.D.N.Y. Mar. 28, 2013), *aff'd*, 556 F. App'x 10 (2d Cir. 2014); *Jeffries v. Lee*, No. 11-CV-40, 2011 WL 3516097, at *4 (S.D.N.Y. Aug. 10, 2011) (holding the "record [was] sufficient to resolve the petitioner's claims" where the "petitioner [did] not explain how any of the detailed findings of fact by the state trial court were incorrect or inconsistent with his description of the facts" and "the state court record, including the findings by the trial court and the briefs on the *coram nobis* petition, contain[ed] ample information that shows the record before the state court"); *Jamison v. Berbary*, No. 01-CV-5547, 2002 WL 1000283, at *1 n.1 (S.D.N.Y. May 15, 2002) (ruling "on the current habeas petition based on the relevant documents, such as state court opinions, trial transcript excerpts submitted and quoted by the parties, and the arguments and statements in the parties' briefs, affidavits and other documents submitted to [the court]" because "neither party allege[d] that the relevant excerpts cited and/or quoted in the state court briefs and the briefs before [the court] do not accurately reflect what transpired at trial"), *report and recommendation adopted*, Order adopting Report and Recommendation (S.D.N.Y. Dec. 18, 2002).

toward Forest Avenue. (Pet'r's Mem. in Supp. of Direct Appeal SR 010.) While canvassing, Officer Hopson encountered Petitioner and Beckford, who fled. (*Id*.) Officer Hopson pursued Beckford on foot, while her partner pursued Petitioner. (*Id*.)

After hearing a radio report of a robbery, Officer Peart returned to canvass the area with Mancebo. (*Id*.) Officer Peart heard "guys screaming," ran around the corner with other officers, and ultimately assisted in removing Petitioner from beneath a car. (*Id*. at SR 011.) He recovered three cell phones from Petitioner's pocket, two of which belonged to Mancebo and Aissouili. (*Id*.) Mancebo was brought to the arrest location where he identified Petitioner. (*Id*.; 440 Motion, appended in Supp. State Court Record SR 130.) Beckford, "who had a laptop and was wearing Beats headphones around his neck," was eventually apprehended by additional officers and identified by Mancebo and Aissouili. (Pet'r's Mem. in Supp. of Direct Appeal SR 011.) Officer Hopson brought Aissouili to Petitioner who identified him as his assailant. (440 Motion SR 131.) According to Aissouili's sworn testimony on cross-examination, a police officer told him that "they got the second one" before he made the identification. (*Id*. (citing Trial Tr. 625).) Nevertheless, according to Officer Hopson's testimony at the pre-trial hearing, she brought Aissouili over to Petitioner and then asked him, "was that the second person?" (*Id*. (citing Hr'g Tr. dated June 28, 2012 37).)

Mancebo's headphones were recovered from Beckford's head. (Criminal Complaint I.) The laptop taken from Aissouili was also recovered a few feet from Petitioner. (Criminal Complaint II.) Officer Peart also recovered a "small, loaded, defaced gun" from beneath the car, which Mancebo identified as "the loaded and operable gun [Petitioner] held earlier that evening." (Pet'r's Mem. in Supp. of Direct Appeal SR 011; *see also* Criminal Complaint I ("A loaded .25 caliber semi-automatic pistol was recovered a few feet from where [Petitioner] was stopped.").)

6

### i. The state felony complaint

The Criminal Complaints charged Petitioner with: (1) robbery in the first degree, in violation of N.Y.P.L.§ 160.15(4); (2) robbery in the second degree, in violation of N.Y.P.L. § 160.10(1); (3) criminal possession of a weapon in the second degree, in violation of N.Y.P.L. § 265.03(1)(b); (4) criminal possession of a weapon in the second degree, in violation of N.Y.P.L. § 265.03(3); and (5) criminal possession of stolen property in the fifth degree, in violation of N.Y.P.L. § 165.40.  (Criminal Complaint I; Criminal Complaint II.)

### ii. Petitioner's arrest and arraignment

Petitioner was arrested on October 21, 2011, and subsequently arraigned in Queens County Criminal Court on October 23, 2011.  (Aff. in Supp. of 440 Motion SR 124, appended in Supp. State Court Record SR 123–284; Mot. for Writ of Error *Coram Nobis* ("*Coram Nobis* Motion") SR 529, appended in Supp. State Court Record SR 525–541.)  Petitioner contends that at arraignment, he did not waive his "C.P.L. § 180.80 right"[6] and the court subsequently was adjourned for grand jury action to be held October 26, 2011.  (*Coram Nobis* Motion SR 529.)  On October 26, 2011, the grand jury voted to indict the Petitioner.[7]  (*Id.*)  The prosecution filed the grand jury indictment (the "Indictment") with the Trial Court on November 10, 2011.  (*Id.*)

The Indictment, filed November 10, 2011, charged Petitioner with: (1) robbery in the first degree, in violation of N.Y.P.L. § 160.15(2); (2) robbery in the first degree, in violation of N.Y.P.L. § 160.15(4); (3) robbery in the second degree, in violation of N.Y.P.L. § 160.10(1); (3) criminal possession of a weapon in the second degree, in violation of N.Y.P.L. § 265.03(1)(b);

---

[6]  The Court is unsure what right Petitioner is referencing as C.P.L. § 180.80 involves proceedings upon a felony complaint and release of a defendant from custody upon failure of timely commencement of a hearing.

[7]  Petitioner challenges his grand jury indictment.  *See* discussion *infra* Section II.e.i.

(4) criminal possession of a weapon in the third degree, in violation of N.Y.P.L. § 265.02(1); and

(5) criminal possession of stolen property in the fifth degree, in violation of N.Y.P.L. § 165.40. (Indictment, annexed to Objs. as Ex. C.)

### iii.    Petitioner's trial

Petitioner was tried before a jury in the Trial Court from June 10, 2013 to June 19, 2013, before the Honorable Kenneth Holder. (*See* State Court Transcripts 196–901.)

### 1.    Voir dire process

Prior to conducting *voir dire*, the Trial Court judge explained to counsel his procedure for jury selection. (Trial Tr. 64–68.) Relevant to the Petition, the Trial Court judge stated he would ask if any person could not serve on the trial — if a "small number of people" responded they could not serve, the judge could excuse them without questioning while if a "larger number of people," the judge would question each "about why it is that they" could not serve. (*Id.* at 64.) Defense counsel did not object to the Trial Court's proposed procedure. (*Id.* at 65.)

The Trial Court then proceeded as explained by addressing the prospective jurors, explaining the nature of the case, identifying the parties and counsel, and describing the expected length of the trial, stating that the case would take "approximately nine business days or less to complete." (*Id.* at 69–74.) The court then asked, "bearing in mind the importance of this civic obligation," whether any prospective juror, due to "pressing business or personal reasons," could not serve for the duration of the trial. (*Id.* at 75.) Four prospective jurors raised their hands and ultimately were excused. (*Id.*; Pet'r's Mem. in Supp. of Direct Appeal SR 008–009.) The Trial Court directed those individuals to return to the central jury room to be reassigned without conducting further individual questioning or inquiry on the record. (Trial Tr. 75–76.) The parties ultimately selected twelve jurors and two alternates over the course of three rounds of jury selection. (*Id.* at 64; *see also id.* at 69–363 (full *voir dire* transcript).) Petitioner and

8

defense counsel at no time objected to any of the jury selection proceedings or *voir dire* nor did they request that the Trial Court conduct further inquiry into the four dismissed prospective jurors.  (*See generally id.*)

### 2.    Summation

During summation, the prosecutor characterized the People's case as "simple" and a "slam dunk," and rejected the defense theory that the evidence had been planted, describing it as "crazy," a "giant conspiracy," and "ridiculous."  (Pet'r's Mem. in Supp. of Direct Appeal SR 012–014, SR 028 (citing Trial Tr. 815–16, 818–19, 838–42); Leave to Appeal Direct Appeal SR 114, appended in State Court Filings SR 113–116.)  The prosecutor also emphasized the dangerousness of the weapon, stating that the gun "could kill you just like any other gun could kill you."  (Pet'r's Mem. in Supp. of Direct Appeal SR 013 (citing Trial Tr. 819); Leave to Appeal Direct Appeal SR 114.)  The prosecutor further underscored the impact of the crimes on Mancebo and Aissouili, referring to them as "real people" who experienced "real trauma," which they were required to recount in court, and attributed that harm to Petitioner and his codefendant, whom she described as "cowards" and "bullies."  (Pet'r's Mem. in Supp. of Direct Appeal SR 012–013 (citing Trial Tr. 817–28, 834); Leave to Appeal Direct Appeal SR 114.)  In addition, the prosecutor appealed to the jury's sense of community safety, asking whether jurors had a "right to feel safe in [their] neighborhood," and urging them to convict Petitioner and Beckford for "com[ing] into Queens and hold[ing] up Queens residents at gunpoint."  (Pet'r's Mem. in Supp. of Direct Appeal SR 014 (citing Trial Tr. 820, 846); Leave to Appeal Direct Appeal SR 114.)  Defense counsel raised a general objection during summation but did not make a specific objection to the prosecutor's remarks.  (Objs. 11.)

### 3.    Verdict

On June 19, 2013, the jury found Petitioner guilty of four counts of robbery in the first degree, in violation of N.Y.P.L. §§ 160.15(2) and (4); two counts of robbery in the second degree, in violation of N.Y.P.L. § 160.10; two counts of criminal possession of a weapon in the second degree, in violation of N.Y.P.L. § 265.03(1)(b); one count of criminal possession of a weapon in the third degree, in violation of N.Y.P.L. § 265.02; and two counts of criminal possession of stolen property in the fifth degree, in violation of N.Y.P.L. § 165.40.  (Trial Tr. 896–900.)

### 4.    Sentence

On July 11, 2013, the Court sentenced Petitioner to two consecutive terms of twelve and one-half years' imprisonment, followed by five years of post-release supervision.  (Sent'g Tr. 919–20.)

### b.    Procedural background

### i.    Direct appeal

In June of 2015, Petitioner appealed the July 11, 2013 verdict (the "Direct Appeal") to the State of New York Appellate Division, Second Department (the "Appellate Division"), arguing (1) that the Trial Court "excused potential jurors based upon hardship without conducting a sufficient inquiry"; (2) that the prosecutor's remarks during summation were improper (or in the alternative, that trial counsel was ineffective for failing to preserve the objection); and (3) the imposed sentence was excessive.  *People v. Bristol*, 30 N.Y.S.3d 906 (App. Div. 2016).  (*See* Pet'r's Mem. in Supp. of Direct Appeal.)

On June 1, 2016, the Appellate Division denied Petitioner's Direct Appeal finding Petitioner's *voir dire* and prosecutor summation arguments were "unpreserved for appellate review."  *Bristol*, 30 N.Y.S.3d at 906.  (Decision & Order of Direct Appeal, appended in State

Court Filings SR 111–112.)  As to Petitioner's prosecutorial misconduct during summation claim, the Appellate Division held "[i]n any event, while certain remarks made by the prosecutor were improper, they were not so flagrant or pervasive as to deprive [Petitioner] of a fair trial." *Bristol*, 30 N.Y.S.3d 906.  (Decision & Order of Direct Appeal SR 111–112.)  Moreover, the Appellate Division found that "[t]he sentence imposed was not excessive."  *Bristol*, 30 N.Y.S.3d 906.  (Decision & Order of Direct Appeal SR 112.)

### ii.    Denial of leave to appeal Direct Appeal

On July 1, 2016, Petitioner moved for leave to appeal his Direct Appeal.  (Criminal Leave Application, appended in State Court Filings SR 113–116.)  On August 19, 2016, the New York Court of Appeals denied Petitioner leave to appeal.  (Order denying Leave to Appeal Direct Appeal, appended in State Court Filings SR 120.)  *People v. Bristol*, 28 N.Y.3d 927 (2016).

### iii.    Federal habeas petition

On June 29, 2017, Petitioner filed the Petition in the Southern District of New York. (Pet.)  Petitioner challenged his conviction on three grounds involving (1) alleged *voir dire* violations, (2) the prosecutor's "inflammatory" statements during closing arguments, and (3) his "unduly harsh and excessive" sentence.  (*Id.* at 3. 6, 8, 9.)  On July 7, 2017, "[b]ecause Petitioner was convicted and sentenced in Queens County, which is located in the Eastern District of New York," the Petition was transferred to this Court.  (Transfer Order, Docket Entry No. 2.)

Pursuant to an order to show cause entered on September 8, 2017, Respondent filed an answer to the Petition (the "Answer") on November 8, 2017, along with the state court record.[8] (Order to Show Cause, Docket Entry No. 5; Answer, Docket Entry No. 7; Resp.'s Mem. in Opp'n to Petition, appended to Answer, Docket Entry No. 7-1.)

---

[8] *See supra* footnote 4 for a discussion of the filed state court record.

On May 22, 2019, the Court referred the Petition to former Magistrate Judge Lois Bloom for a report and recommendation, (Order dated May 22, 2019), and, on December 19, 2019, Judge Bloom recommended that the Court deny the Petition in its entirety.[9]  (R&R 1, 14–15).

The Court granted Petitioner's three requests for extensions of time to file his objections,[10] and Petitioner filed his objections to the R&R on June 2, 2020.  (Objs.)  Respondent responded to Petitioner's objections on June 11, 2020.  (Objs. Resp.)

On September 3, 2020, Petitioner filed a motion to hold his Petition in abeyance so he could "properly exhaust" his ineffective assistance of counsel and prosecutorial misconduct claims in state court.  (Pet'r's Mot. for Pet. to be Held in Abeyance, Docket Entry No. 18.)  On September 17, 2020, Respondent opposed the motion to hold in abeyance.  (Resp.'s Opp'n to Pet'r's Mot. for Pet. to be Held in Abeyance, Docket Entry No. 19.)  On November 10, 2020, the Court granted Petitioner's motion, staying the case and holding the Petition "in abeyance pending the completion of Petitioner's state court litigation."  (Order dated Nov. 10, 2020.)  In addition, the Court ordered Petitioner to provide the "Court with the case numbers for each of his state court actions and the names and addresses of the courts in which his cases are pending" and "provide monthly, written updates to this Court, on or before the 10th of each month, describing the progress and status of his state court litigation" "beginning in December of 2020 and continuing until further order of this Court."  (*Id.*)  Lastly, the Court ordered Petitioner to "amend his [P]etition with his additional claims and seek adjudication in this Court within thirty (30) days after the conclusion of the state court litigation."  (*Id.*)

---

[9]  The R&R is discussed *infra* Section I.c.

[10]  (*See* Mot. for Extension of Time to File, Docket Entry No. 11; Order dated Jan. 14, 2020; Mot. for Extension of Time to File, Docket Entry No. 12; Order dated Jan. 30, 2020; Mot. for Extension of Time to File, Docket Entry No. 13; Order dated Mar. 27, 2020.)

Between February 25, 2021 and July 16, 2021, Petitioner filed several letters requesting extensions of time to file his 440 Motion which the Court granted.[11]  In addition, Petitioner filed several letters informing the Court of the difficulties he faced while incarcerated to prepare his 440 Motion without assistance of counsel and requesting judicial intervention.[12]  On July 16, 2021, the Court "administratively closed" the case in light of Court's issued stay on November 10, 2020 to be "reopened when [P]etitioner has exhausted his state-court remedies and the Court can proceed with the case."  (Order dated July 16, 2021.)

### iv.    440 Motion

On August 16, 2023, Petitioner filed his 440 Motion in the Trial Court seeking to vacate his conviction.  (*See* 440 Motion.)  The 440 Motion asserted two grounds for ineffective assistance of trial counsel arguing: (1) trial counsel should have sought to reopen the suppression hearing when, at trial, one of the victims testified that an officer had told him that police "got the second" robber before bringing that victim to a show-up identification, (*id.* at SR 137–154); and (2) trial counsel's pretrial motion to dismiss the Indictment on state law speedy trial grounds, pursuant to C.P.L. § 30.30, would have succeeded had counsel included "more colorable and meritorious claims," (*id.* at SR 154–164).

On September 17, 2024, the Trial Court denied the motion without a hearing.  (Decision & Order on 440 Motion, appended in Supp. State Court Record SR 436–448.)  The Trial Court

---

[11] (Pet'r's Extension Mot., Docket Entry No. 24; Order dated Mar. 19, 2021, Docket Entry No. 25; Pet'r's Extension Mot., Docket Entry No. 26; Pet'r's Extension Mot., Docket Entry No. 27; Pet'r's Extension Mot., Docket Entry No. 28; Order dated Apr. 16, 2021; Pet'r's Extension Mot., Docket Entry No. 29; Order dated May 17, 2021; Pet'r's Extension Mot., Docket Entry No. 30; Order dated May 25, 2021; Pet'r's Extension Mot., Docket Entry No. 31.)

[12] (Pet'r's Ltr. dated Feb. 16, 2021, Docket Entry No. 20; *Pro Se* Office's Resp. to Pet'r's Ltr. dated March 1, 2021, Docket Entry No. 21; Pet'r's Ltrs. dated Feb. 22, 2021 and Feb. 28, 2021, Docket Entry No. 22; Pet'r's Ltr. dated Mar. 7, 2021, Docket Entry No. 23.)

rejected Petitioner's suppression argument on the merits, concluding that although the victim's trial testimony was "potentially pertinent," it did not warrant reopening the suppression hearing and any reopened hearing would not likely "have affected the hearing court's decision on suppression." (*Id.* at SR 440–444.)  On Petitioner's speedy trial argument, the Trial Court rejected the argument on both procedural and substantive grounds.  (*Id.* at SR 445–448.)  First, the Trial Court held the claim was barred on procedural grounds by C.P.L. § 440.10(2)(c) because the factual basis of the ineffectiveness claim — whether the prosecutor had declared readiness for trial within the time allowed under state law — was readily apparent from the record and, therefore, the claim should have been raised on Direct Appeal.  (*Id.* at SR 445.)  Further, the Trial Court held the claim was also barred by C.P.L. § 440.10(3)(b) because the Trial Court, in denying counsel's speedy trial motion, had previously held that the prosecutor complied with their speedy trial obligations.  (*Id.* at SR 445–446.)  Second, the Trial Court denied the speedy trial argument claim on its merits, holding a "'stronger' motion to dismiss on speedy trial . . . would not have succeeded, and counsel cannot be deemed ineffective for failing to advance a meritless argument."  (*Id.* at SR 446–447.)

On October 15, 2024, Petitioner sought leave to appeal the denial of his 440 Motion. (Mot. for Leave to Appeal 440 Motion, appended in Supp. State Court Record SR 449–482.) The Appellate Division denied Petitioner leave to appeal on November 25, 2024.  (Decision & Order on Mot. for Leave to Appeal 440 Motion, appended in Supp. State Court Record SR 524.)

### v.    *Coram nobis* petition

On August 23, 2018, Petitioner filed a *pro se coram nobis* motion in the Appellate Division claiming ineffective assistance of appellate counsel in connection with his Direct Appeal.  (*Coram Nobis* Motion.)  Petitioner argued that his appellate counsel had failed to argue on Direct Appeal that the Trial Court erroneously denied his trial counsel's pretrial C.P.L. §

14

30.30 speedy trial motion.[13]  (*Id.* at SR 535–539.)  Petitioner argued that he "was denied

effective assistance of appellate counsel for failure to raise the most colorable claim that

appellate counsel could have raised" on Direct Appeal.  (*Id.* at SR 528.)

On September 24, 2025, the Appellate Division denied Petitioner's *coram nobis* motion

holding Petitioner "failed to establish that he was denied the effective assistance of appellate

counsel."  *People v. Bristol*, 239 N.Y.S.3d 635, 636 (App. Div. 2025) (first citing *Jones v.*

*Barnes*, 463 U.S. 745 (1983); and then citing *People v. Stultz*, 2 N.Y.3d 277 (2004)).  (Decision

& Order on *Coram Nobis* Motion, appended in Supp. State Court Record SR 670.)  Petitioner did

not seek leave to appeal this decision to the New York Court of Appeals.  (*See generally* Supp.

State Court Record.)

### vi.    Reopening of federal habeas Petition

On April 23, 2025, Petitioner filed a letter informing the Court that Petitioner's counsel

informed him that on November 25, 2024, Petitioner's 440 Motion was denied by the Appellate

Division.  (Pet'r's Ltr. dated Apr. 17, 2025; *see* Ltr. from Robert Grossman, Esq. to Pet'r dated

Apr. 9, 2025, appended to Pet'r's Ltr. dated Apr. 17, 2025.)  Pursuant to this letter, the Court

reopened the case on April 29, 2025.  (Order dated Apr. 29, 2025.)

On December 10, 2025, the Court ordered Respondent to file supplemental briefing

addressing the additional arguments Petitioner raised in his objections.  (Order dated Dec. 10,

---

[13]  The Court notes that both Petitioner's *coram nobis* petition and 440 Motion include arguments involving trial counsel's pretrial motion to dismiss the Indictment on state law speedy trial grounds, pursuant to C.P.L. § 30.30.  However, the 440 Motion argues ineffective assistance of trial counsel for failing to include "more colorable and meritorious claims," while the *coram nobis* petition argues ineffective assistance of appellate counsel for failing to raise the issue on Direct Appeal.  (440 Motion; *Coram Nobis* Motion.)  Petitioner brought the *coram nobis* petition claim after the Appellate Division's denial of the 440 Motion, finding that the issue should have been raised on Direct Appeal, was barred by C.P.L. § 440.10(3)(b), and otherwise failed on the merits.  (Decision & Order on 440 Motion.)

2025.)  Respondent filed two motions for an extension of time, (Resp. Extension Mot., Docket Entry No. 35; Resp. Extension Mot., Docket Entry No. 36), which the Court subsequently granted, (Order dated Jan. 16, 2026; Order dated Feb. 13, 2026).  On March 9, 2026, Respondent filed its supplemental response.  (Supp. Objs. Resp.)

      **c.   R&R**

Pursuant to the Court's referral of the Petition on May 22, 2019, (Order dated May 22, 2019), on December 19, 2019, Judge Bloom recommended the Court deny the Petition in its entirety.  (R&R 1, 14–15.)  Specifically, Judge Bloom concluded: (1) Petitioner's *voir dire* claims were procedurally barred and without merit, (*id.* at 9–11); (2) Petitioner's summation claims were procedurally barred and without merit, (*id.* at 9–10, 11–14); and (3) Petitioner's excessive sentence claim "was within the range permitted by state law" and thus "present[ed] no constitutional claim" nor a "cognizable" issue on habeas review, (*id.* at 14).  Having concluded that Petitioner "made [no] substantial showing of the denial of any constitutional right," Judge Bloom recommended "no certificate of appealability should be issued" and "for the purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this [P]etition would not be taken in good faith."  (*Id.* at 14–15.)

In addition to the above findings, Judge Bloom found that Petitioner's labeling of his *voir dire* claim as a "mode of proceedings error" could not "resolve the preservation issue."  (*Id*. at 9 n.6.)  Judge Bloom noted that under New York law, "mode of proceeding errors" do not require preservation to be raised on appeal but "encompass a very narrow exception to the preservation rule" requiring the error "go to the essential validity of the process and be so fundamental that the entire trial is irreparably tainted."  (*Id.* (quoting *People v. Mack*, 27 N.Y.3d 534, 534 (2016)).)  Judge Bloom found the "[c]ourt's choice not to question the four jurors it excused [ ] did not irreparably taint the entire trial" and thus Petitioner's claim remained a *voir dire* claim.

(*Id.*)  Moreover, Judge Bloom, noting that "Petitioner included one sentence in his appellate brief raising ineffective assistance of [trial] counsel" but "did not raise an independent ineffective assistance of counsel claim," found that Petitioner "[could] not rely on ineffective assistance as cause for his procedural default" for the Court to disregard his trial counsel's failure to preserve his *voir dire* objection, and instead considered the merits.  (*Id.* at 10 n.7 (citing Pet'r's Mem. in Supp. of Direct Appeal SR 030)).)

## II.    Discussion

### a.    Standards of review

#### i.    Habeas petition

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* § 2254(d)(1)–(2); *see also Klein v. Martin*, 607 U.S. 213, 220 (2026) ("A federal court may grant habeas relief on a claim that a state court resolved on the merits only when the state court's 'decision' was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or 'was based on an unreasonable determination of the facts in light of the evidence presented' in state court." (quoting *id.*)); *Shoop v. Twyford*, 596 U.S. 811, 811–12 (2022) ("AEDPA provides that a federal habeas court cannot grant relief in a case adjudicated on the merits in state court unless the state court (1) contradicted or unreasonable applied this Court's precedents, or (2) handed down a decision

17

'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" (quoting 28 U.S.C. § 2254(d)(1)–(2))); *Brown v. Davenport*, 596 U.S. 118, 127 (2022) ("[A] federal court '*shall . . . not gran[t]*' relief with respect to a claim that has been adjudicated on the merits in state court '*unless*' the state court's decision was (1) 'contrary to' or an 'unreasonable application of' clearly established federal law, as determined by the decisions of this Court, or (2) based on an 'unreasonable determination of the facts' presented in the state-court proceeding." (emphasis and alterations in original) (quoting 28 U.S.C. § 2254(d))).  "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)); *see Fischer v. Smith*, 780 F.3d 556 (2d Cir. 2015) (quoting same); *see also Harrington v. Richter*, 562 U.S. 86, 98–99 (2011) (concluding that summary rulings constitute adjudications on the merits).  To prove that the state court's decision was unreasonable, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion."  *Brown*, 596 U.S. at 135 (alteration in original) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)); *see also Andrew v. White*, 604 U.S. 86, 92 (2025) ("An unreasonable application, in turn, is one with which no fairminded jurist would agree."); *Harrington*, 562 U.S. at 101 (explaining that under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded jurists could disagree' on the correctness of the . . .  decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Andrew*, 604 U.S. at 92 ("To show that a state court unreasonably applied clearly established federal law,

18

a petitioner must show that the court unreasonably applied 'the holdings, as opposed to the dicta, of this Court's decisions.'" (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014))); *Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the [state] [c]ourt's decision.").  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 412–13.  In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The decision must be "objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409).  A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  To accomplish this, "[i]t is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'"  *Brown*, 596 U.S. at 135 (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)); *see also Brumfield*, 576 U.S. at 313–14 ("[S]tate-court factual determinations [are not] unreasonable 'merely because [a federal post-conviction court] would have reached a different conclusion in the first instance.'" (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010))).  Rather, factual determinations made by the state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the

19

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Even if

"'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on

habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 558

U.S. at 301 (alterations in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)); *see*

*also Davis*, 576 U.S. at 274 (quoting same). A court may overturn a state court's factual

determination only if the record cannot "plausibly be viewed" as consistent with the state court's

fact-finding or if "a reasonable factfinder must conclude" that the state court's decision was

inconsistent with the record evidence. *Rice*, 546 U.S. at 341.

### ii.   R&R

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews *de novo* the parts of the report and recommendation

to which the party objected. *Id.*; *Nambiar v. Central Orthopedic Grp., LLP*, 158 F.4th 349, 358

(2d Cir. 2025); *Ramgoolie v. Ramgoolie*, No. 22-1409, 2024 WL 4429420, at *2 (2d Cir. Oct. 7,

2024) (summary order); *see also Houghtaling v. Eaton*, No. 22-638, 2023 WL 113840, at *2 n.3

(2d Cir. Jan. 5, 2023) (summary order) (noting that the district court conducted a *de novo* review

of the magistrate judge's report and recommendation and addressed the plaintiff's objections).

The district court may adopt those portions of the recommended ruling to which no timely

objections have been made, provided no clear error is apparent from the face of the record. *See*

*S.J. v. N.Y.C. Dep't of Educ.*, No. 21-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022)

(summary order) (noting that the district court applied the correct legal standard in conducting *de*

*novo* review of portions of the magistrate judge's report to which specific objections were made

and reviewing portions not objected to for clear error). The clear error standard also applies

20

when a "party makes only conclusory or general objections, or simply reiterates his original arguments." *Nambiar*, 158 F.4th at 361 (quoting *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022)); *Miller*, 43 F.4th at 120 ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."). Where, however, a party's "objections take 'issue with a specific legal conclusion in the report and recommendation,'" a district court reviews the objected-to portions of the report and recommendation *de novo*, "even if they repeat an argument raised before the magistrate judge." *Knight v. City of New York*, 164 F.4th 173, 177 (2d Cir. 2026) (quoting *Nambiar*, 158 F.4th at 361); *Miller*, 43 F.4th at 120–21 (concluding that the plaintiff's objection, although revisiting an issue already argued, should have been reviewed *de novo* where the plaintiff objected to a "specific legal conclusion in the report and recommendation," and noting that clear error is normally applied "when the objections are nonspecific or 'merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition'" (alteration in original) (quoting *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006))).

"*Pro se* parties are generally accorded leniency when making objections." *Fagan v. Superintendent, E. N.Y. Corr. Facility*, No. 20-CV-7389, 2024 WL 79955, at *1 (S.D.N.Y. Jan. 8, 2024) (quoting *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)), *appeal dismissed*, No. 24-432 (2d Cir. May 30, 2024); *see also Jones v. Cronin*, No. 20-CV-5348, 2023 WL 8643800, at *1 (S.D.N.Y. Dec. 14, 2023) (quoting same). "Nonetheless, even a *pro se* party's objections to a [r]eport and [r]eccomendation must be specific and clearly aimed at particular findings in the magistrate's

21

proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.'" *Fagan*, 2024 WL 79955, at *1 (alterations in original) (quoting *Pinkney*, 2008 WL 2811816, at *1); *see also Jones*, 2023 WL 8643800, at *1 (quoting same).  When a party proceeds *pro se*, "his submissions are read liberally and interpreted 'to raise the strongest arguments that they suggest'" although "a *pro se* litigant is not exempt 'from compliance with relevant rules of procedural and substantive law.'" *Razzoli v. Fed. Bureau of Prisons*, No. 12-CV-3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) (first quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); and then quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see also Carson v. McGuinness*, No. 23-CV-6776, 2025 WL 3539106, at *4 (S.D.N.Y. Dec. 10, 2025) (same).

### b.   Unopposed portions of the R&R

No party has objected to Judge Bloom's recommendations that the Court deny the Petition based on: (1) Petitioner's claim that his sentence was "unduly harsh and excessive" because it "presents no constitutional claim and is not cognizable on habeas review"; (2) Petitioner's claims involving both *voir dire* error and prosecutorial misconduct that were "unpreserved for appellate review" as Petitioner "failed to raise a contemporaneous objection"; and (3) Petitioner's prosecutorial misconduct claim specifically with regards to the prosecutor's comments on the lethality of the gun used by Petitioner during the robberies.  (*See* R&R 9–10, 14; *see generally* Objs.; Objs. Resp.; Supp. Objs. Resp.)

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, adopts Judge Bloom's recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) to deny the Petition's claims for excessive sentencing and prosecutorial misconduct specifically related to the prosecutor's gun comments.  In addition, the Court adopts Judge Bloom's findings and

22

recommendation that both the prosecutorial misconduct and *voir dire* error claims were unpreserved for review, but nevertheless, the Court addresses the merits of these claims.

###### c.   Petitioner's objections to the R&R

Petitioner raises specific objections to the R&R, all of which challenge Judge Bloom's conclusion that the Petition should be denied in its entirety, and raises additional arguments he asks the Court to also consider as he "became aware of [these additional] grounds when Respondent filed the Answer to the Petition." (Objs. 4.)  Specifically, Petitioner objects to: (1) Judge Bloom's findings on and discussion of his *voir dire*, or mode of proceedings, error; and (2) Judge Bloom's findings on and discussion of his prosecutorial misconduct claim. (*Id.* at 5, 10, 13–16.)  Petitioner also claims Judge Bloom failed to review both claims in connection with his claim for failure of counsel to object. (*Id.*)  Petitioner further objects to the R&R's case background because it was based on "the evidence adduced at trial" which he claims is based on the prosecutor's "intentional chronic deceit" upon the Trial Court and because of other alleged inadequacies.[14] (*Id.* at 3–4.)  As to Petitioner's new arguments, Petitioner "request[s] permission to *supplement* not amend the petition for habeas relief" to consider the following additional constitutional violations: (1) lack of a grand jury indictment; (2) ineffective assistance of trial

---

[14]  Because the Court reviews Petitioner's claims *de novo*, the Court declines to respond to Petitioner's objections to the R&R's case background and instead reviews both the federal court and state courts' dockets in their entirety, including the full state court record submitted by both Petitioner, (*see* State Court Record, annexed to Objs. as Ex. A), and Respondent, (*see* State Court Filings; State Court Transcripts; Supp. State Court Record).  The Court also notes that these specific objections only implicate Petitioner's new argument regarding the inadequacies of the commencement of the underlying state court criminal action.

counsel; (3) ineffective assistance of appellate counsel;[15] and (4) fraud on the court, pursuant to

Rule 60(d)(3) of the Federal Rules of Civil Procedure.[16]  (Objs. 5.)

---

[15]  Petitioner states he "lodges a specific objection to [Judge] Bloom's omission of the claims for [i]neffective [a]ssistance of trial and appellate counsel" and claim for constitutional violations based on an insufficient indictment by the grand jury.  (Objs. 10, 13.)  Petitioner's habeas Petition does not include any of these arguments.  The Petition only includes his arguments with regards to the mode of proceedings error, the prosecutor's inflammatory closing argument, and that his sentence was unduly harsh and excessive.  (Pet. 3, 6, 8, 9.)  The only references to Petitioner's ineffective assistance of counsel claims are in connection with two petitions he noted to have filed, one with the Queens Supreme Court in the form of a 440 Motion for ineffective assistance of trial counsel and the second with the Appellate Division in the form of a writ of *error coram nobis* for ineffective assistance of appellate counsel.  (*Id.* at 13.)  Petitioner makes no mention of an insufficient criminal complaint or Indictment.  For this reason, the Court considers Petitioner's two ineffective assistance of counsel claims and insufficiency of a grand jury indictment to be new arguments found for the first time in his objections and addresses each *infra* Section II.e.

[16]  Petitioner accuses Respondent of "[f]raud on the Court" for omitting "major portions of the [s]tate [r]ecord" from the state court records filed on the docket in connection with the Petition.  (Objs. 4–5; *see* State Court Record.)  Other than one mention of this claim in Petitioner's objections, Petitioner fails to elaborate further or include an argument on the issue.  (Objs. 5; *see generally id.*)  Regardless, this is not a cognizable basis for habeas relief and therefore the Court does not address this argument.  *See* 28 U.S.C. § 2254(a) (an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States"); *id.* § 2254(d)(1)–(2) (A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.").
    Petitioner's allegations of fraud on a federal habeas court is a claim not to be raised in a habeas proceeding, but instead to be raised post-judgment and brought under Rule 60 of the Federal Rules of Civil Procedure ("Rule 60") seeking to vacate the federal court's judgment on the habeas petition.  *See Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2006) ("[R]elief under Rule 60[] is available with respect to a previous habeas proceeding only when the Rule 60[] motion attacks the integrity of the habeas proceeding."); *United States v. Malachowski*, No. 09-CR-125, 2019 WL 11660792, at *2 (N.D.N.Y. Nov. 12, 2019) (explaining that "[c]ourts have found that a Rule 60(b) motion and a habeas petition are different, since a habeas petition seeks to invalidate the court's judgment of conviction, while a Rule 60(b) motion seeks only to vacate the federal court judgment dismissing the habeas petition" and holding that "relief under 60(b) is available with respect to a previous habeas proceeding [ ] when the Rule 60(b)(6) motion attacks the integrity of the habeas proceeding" (alterations adopted) (internal quotation marks, alteration, and citations omitted)); *Diaz v. Artus*, No. 12-CV-75, 2018 WL 3429276, at *4 (W.D.N.Y. July 16, 2018) (finding an "allegation of fraud on the habeas court could relate to a defect in the

Respondent argues that Petitioner's objections are "meritless and should be overruled in their entirety" and the Court should "dismiss the [P]etition[] and decline to issue a certificate of appealability." (Objs. Resp. 1; Supp. Objs. Resp. 1.)  First, Respondent contends that Judge Bloom "correctly determined" that Petitioner's *voir dire* claim was procedurally barred and meritless. (Objs. Resp. 1.)  Respondent argues that Petitioner incorrectly asserts that the *voir dire* claim is not procedurally barred because he was not required to preserve that claim, (Objs. 13–14), as "New York appellate courts regularly apply the preservation rule to claims that state trial courts conducted insufficient voir dire prior to discharging prospective jurors." (Objs. Resp. 2.)  Second, Respondent contends that Petitioner's prosecutorial misconduct summation claim was procedurally barred and is meritless. (*Id.* at 1.)  Third, Respondent argues the "remainder of [P]etitioner's objections simply reiterate the arguments in the Petition and, accordingly, the portions of the R&R to which they relate should also be reviewed for clear error." (*Id.* at 2.)  Respondent points to case law that holds "[e]ven a pro se petitioner's objections to a [R&R] 'must be specific and clearly aimed at particular findings in the magistrate's proposal, such that

---

integrity of the federal habeas proceedings and thus fall within Rule 60(b)" (internal quotation marks omitted) (citing *Jones v. Ryan*, 733 F.3d 825, 834 (9th Cir. 2013) ("Proper Rule 60(b) motions include those alleging fraud on the federal habeas corpus court . . . ."))); *Wright v. Poole*, 81 F. Supp. 3d 280, 294–95 (S.D.N.Y. 2014) (considering a Rule 60(d)(3) challenge alleging fraud on the court which denied the petitioner's habeas petition); *Pena v. United States*, 859 F. Supp. 2d 693, 696–97 (S.D.N.Y. 2012) (explaining that Rule 60 may only be used to attack the integrity of a habeas proceeding).  Rule 60(b)(3) involves fraud by an opposing party, while Rule 60(d) involves fraud on the court.  Fed. R. Civ. P. 60.

However, even if Petitioner were to bring a subsequent Rule 60 motion challenging Judge Bloom's findings, her resulting R&R was not a final judgment and therefore, a Rule 60 motion is inapplicable.  *See Uzoigwe v. Charter Commc'ns*, No. 23-CV-7383, 2024 WL 1308774, at *1 (E.D.N.Y. Mar. 27, 2024) (denying a Rule 60 motion because "Rule 60(b) only applies to 'judgements that are final' and an R&R "is not a final judgment" (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996))).  Petitioner would have to bring a Rule 60 motion challenging this Memorandum and Order, but as explained *supra* footnote 14, the Court reviews Petitioner's claims *de novo* and considers the entire record submitted by both parties.

no party be allowed a second bite at the apple by simply relitigating a prior argument.'" (*Id.* (quoting *Lewis v. Lee*, No. 11-CV-478, 2015 WL 5751396, at *3 (S.D.N.Y. Sep. 29, 2015).) Fourth, Respondent argues the "Court should disregard the many new arguments and claims asserted in the [o]bjections . . . because they were not raised before Judge Bloom." (*Id.* at 1.) If the Court were to consider these new arguments, Respondent contends the "new claims are either unexhausted, procedurally barred, or wholly without merit." (Supp. Objs. Resp. 1.)

### d.  Arguments in the Petition

Petitioner originally raised three arguments in its Petition and filed objections to the R&R relating to two of these issues: (1) *voir dire* error (or, as Petitioner calls it, a "mode of proceeding" error); and (2) prosecutorial misconduct error.[17] (Objs. 13–16; *see* Pet. 3.) Petitioner argues that Judge Bloom either "failed to review" his claims or incorrectly decided his claims. (Objs. 4, 13–16.)

Respondent argues that Petitioner's "objections simply reiterate the arguments in the Petition and, accordingly, the portions of the R&R to which they relate should also be reviewed for clear error." (Objs. Resp. 2 (citing *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826, 2020 WL 1429472 (E.D.N.Y. Mar. 24, 2020), *aff'd sub. nom., Abbott Laby's v. H&H Wholesale Servs., Inc.*, No. 23-446, 2024 WL 4297472 (2d Cir. Sep. 26, 2024) (summary order)).) Respondent contends that "[e]ven a pro se petitioner's objections to a [r]eport and [r]eccomendation 'must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.'" (*Id.* (quoting *Lewis*, 2015 WL 5751396, at *3).)

---

[17] As explained *supra* Section II.b, Petitioner does not challenge Judge Bloom's findings on the third argument he raised in his Petition: that his sentence was "unduly harsh and excessive." (*See* R&R 14; *see generally* Objs.; Supp. Objs. Resp.)

Upon review of Petitioner's arguments in his objections,[18] the Court finds his arguments to be a "rehashing" and "relitigating" of the type that courts typically will review for clear error. *See Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451–52 (S.D.N.Y. 2008) (reviewing *pro se* petitioner's objections to a report and recommendation on his habeas petition for clear error, and not *de novo*, where the objections were "nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge" (quoting *Camardo v. General Motors Hourly–Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992))); *see also Lankford v. McCarthy*, No.21-CV-22, 2024 WL 1694018, at *3 (N.D.N.Y. Apr. 19, 2024) (same); *Rivera v. Kaplan*, No. 17-CV-2257, 2022 WL 3572880, at *3 (S.D.N.Y. Aug. 19, 2022) (collecting cases) (same); *Williams v. Sheehan*, No. 11-CV-2435, 2014 WL 3734332, at *4 (E.D.N.Y. July 28, 2014) (same); *Bryan v. Lee*, No. 09-CV-9276, 2013 WL 5586312, at *2 (S.D.N.Y. Oct. 9, 2013) (same); *Rivera v. Ercole*, No. 09-CV-5547, 2013 WL 4414863, at *2 (S.D.N.Y. Aug. 15, 2013) (same); *Guerrero v. Tracey*, 425 F. Supp. 2d 434, 436 (S.D.N.Y. 2006) (same).

However, in the interest of fairness, the Court conducts a *de novo* review.[19]  *See Segura v. Griffin*, No. 16-CV-6688, 2021 WL 242263, at *1 (E.D.N.Y. Jan. 25, 2021) (despite the *pro se*

---

[18]  *See infra* Sections II.d.i and ii discussing Petitioner's specific arguments made in his objections to the R&R.

[19]  The Appellate Division reviewed both of Petitioner's claims, the alleged *voir dire* error and prosecutorial misconduct, and found both unpreserved for appellate review.  (Decision & Order of Direct Appeal SR 111.)  The Appellate Division did not find that the claims were "procedurally barred."  (*Id.*)  Instead, the Appellate Division reviewed the merits and decided both claims to be without merit.  (*Id.* at SR 111–112.)  For this reason, the Court need not engage with an analysis of whether or not Petitioner has demonstrated cause to excuse the procedural bar because it will review the Appellate Division's findings on the merits of each claim.  *See Thomas v. Griffin*, No. 14-CV-647, 2023 WL 3570969, at *7 (E.D.N.Y. May 19, 2023) (finding the court "need not decide whether the [ ] claim is procedurally barred" because the court "agree[d] with the Appellate Division that the claim fails on the merits"); *Thomas v. State of New York*, No. 08-

petitioner's objections "simply rehash[ing] the arguments raised in his [habeas p]etition," the court reviewed the report and recommendation *de novo*); *see also McDay v. Napoli*, No. 09-CV-454, 2013 WL 6231151, at *2 (E.D.N.Y. Dec. 2, 2013) (same); *Vega v. Fischer*, 463 F. Supp. 2d 470, 473 (S.D.N.Y. 2006) (same); *Bingham v. Duncan*, No. 01-CV-1371, 2003 WL 21360084, at *1 (S.D.N.Y. June 12, 2003) (same); *Nelson v. Smith*, 618 F. Supp. 1186, 1190 (S.D.N.Y. 1985) (same); *see also Moss v. Colvin*, 845 F.3d 516, 520 n. 2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate them.'" (third, fourth, and fifth alterations in original) (first quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sep. 27, 2013); and then citing 28 U.S.C. § 636(b)(1))); *Joseph v. Korn*, No. 19-CV-7147, 2021 WL 912163, at *1 (E.D.N.Y. Mar. 9, 2021) ("Although '[o]bjections that reiterate arguments considered and rejected by the magistrate are reviewed for clear error,' in an abundance of caution, this [c]ourt reviews [the] [p]laintiff's arguments *de novo*." (first alteration in original) (first quoting *Cruz v. Colvin*, No. 13-CV-1267, 2014 WL 5089580, at *1 (S.D.N.Y. Sep. 25, 2014); and then citing *Parker v. Comm'r of Soc. Sec'y Admin., No.* 18-CV-3814, 2019 WL 4386050, at *6 (S.D.N.Y. Sep. 13, 2019))).

---

CV-4389, 2009 WL 763460, at *2 n.2 (E.D.N.Y. Mar. 23, 2009) (reviewing the claim's merits because the Appellate Division only referred to the claim as unpreserved, and not expressly as "procedurally barred" and decided on the merits); *see also Harris v. Reed*, 489 U.S. 255, 261 (1989) ("[T]he mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim."); *Deane v. Lee*, No. 20-CV-110, 2024 WL 5162231, at *5 (E.D.N.Y. May 21, 2024) ("Because there is an 'ambiguity that the judgment rests on a state procedural bar,' this [c]ourt 'presume[s] the state court resolved the decision on the merits,' and therefore finds it is not precluded from reviewing the claim on the merits." (quoting *Licausi v. Griffin*, 60 F. Supp. 3d 242, 256 (E.D.N.Y. 2020))).

As Petitioner's *voir dire* and prosecutorial misconduct claims were decided on the merits by the Appellate Division, they are entitled to deference under AEDPA.[20] *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (explaining that AEDPA "demands that state-court [adjudications on the merits] be given the benefit of the doubt" (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24, (2002) (per curiam))); *Reiley v. Ercole*, 491 F. App'x 225, 228 (2d Cir. 2012) (providing AEDPA deference where the Appellate Division denied the petitioner's claims on their merits); *Sellan*, 261 F.3d at 312 (holding that, where a state court adjudicates a subsequent petitioner's claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law"); *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001) (holding that under AEDPA, a federal court's review following a state court's adjudication of a petitioner's claim on the merits is "deferential").

### i.    *Voir dire* **alleged error**

First, Petitioner argues that during *voir dire*, the Trial Court "allow[ed] [ ] prospective jurors to decide whether or not to serve as a juror in the [P]etitioner's trial" by allowing four prospective jurors to excuse themselves from jury service for "pressing personal or business" reasons without further questioning.  (Pet. 6; Objs. 14.)  Petitioner contends that the Trial Court failed to act in accordance with Judiciary Law § 517 by failing to "make individual hardship assessments of the prospective jurors" because "[a] determination to grant a hardship excuse from jury duty requires judicial exercise of discretion."  (Objs. 14.)  Therefore, Petitioner contends the Trial Court judge's "abdicat[ion of] its judicial role . . . denied [P]etitioner due process under the law and his constitutional right to trial by jury" because his actions "resulted in

---

[20] *See supra* footnote 19.

a jury pool comprised solely of prospective jurors who wanted to be on the jury." (*Id.* at 13–15.) Second, Petitioner contends his *voir dire* issues should be considered a mode of proceeding error and thus the objection did not have to be preserved by trial counsel during Petitioner's Trial Court trial.[21] (*Id.* at 13–14.) Petitioner argues that "a trial court's delegation or the absence of judicial oversight during a criminal trial falls within one of New York's narrow exemptions to the contemporaneous objection rule, due to the fact that it directly impacts a defendant's constitutional rights." (*Id.* at 13 (citing *People v. Ahmed*, 66 N.Y.2d 307, 310 (1985)).)

Respondent argues first, that Petitioner's *voir dire* claims are procedurally barred because "New York appellate courts regularly apply the preservation rule to claims that state trial courts conducted insufficient voir dire prior to discharging prospective jurors."[22] (Objs. Resp. 2 (first

---

[21] Petitioner does not dispute that his *voir dire* argument was unpreserved for appellate review. Instead, he argues that his claim should be considered a "mode of proceedings" error which does not require preservation. (Objs. 13–14.) *See Brown v. Greiner*, 409 F.3d 523, 529 (2d Cir. 2005) (explaining the "mode of proceedings exception to the rule against considering unpreserved issues on appeal . . . allows appellate consideration of certain fundamental errors despite the absence of a timely objection, but is limited to those errors going to the very organization of the court or at such basic variance with the mode of procedure mandated by law that they impair the essential validity of the criminal proceedings" (internal quotation marks omitted)); *People v. Mack*, 27 N.Y.3d 534, 534 (2016) (explaining that "[m]ode of proceedings errors encompass a very narrow exception to the preservation rule" and "[t]he error must go to the essential validity of the process and be so fundamental that the entire trial is irreparably tainted").

[22] For the reasons explained in *supra* footnote 19, the Court reviews the merits of the claim although the Appellate Division found the claim to be unpreserved. Therefore, the Court declines to address whether the objection is considered a "mode of proceedings" objection that does not require preservation during trial to be reviewed. *See Bennett v. Spitzer*, No. 05-CV-1399, 2007 WL 389213, at *11 n.6 (E.D.N.Y. Jan. 31, 2007) ("Because [the c]ourt concludes on the merits, under the standard for habeas review, . . . we need not consider the procedural question of whether the objection was properly preserved . . . ."); *see also United States v. Abrams*, 137 F.3d 704, 708 (2d Cir. 1998) ("Because we conclude, under the ordinary standard of appellate review, that the district court did not abuse its discretion, we need not consider whether the objection was properly preserved or waived."); *Murray v. Griffin*, No. 17-CV-26, 2017 WL 2817044, at *8 (E.D.N.Y. June 28, 2017) (reviewing the Appellate Division's "ruling on the merits of the claim, without regard to any possible procedural bar, but with deference to a ruling on the merits required under AEDPA").

30

citing R&R 14; and then citing *People v. King*, 27 N.Y.3d 147, 156 (2016)).)  Second, Respondent contends that the Court should adopt Judge Bloom's "well-reasoned R&R" in its entirety for the reasons stated in the R&R and for the reasons stated "in [R]espondent's memorandum of law" submitted in opposition to the Petition.  (*Id.* (citing Resp.'s Mem. in Opp'n to Petition 13–17).)  Third, Respondent argued in its Answer to the Petition that the Supreme Court has never found that a judge's excusal of a small number of jurors based on hardship without further questioning violated a defendant's Sixth Amendment right to trial by an impartial jury.  (Resp.'s Mem. in Opp'n to Petition 16–17.)  Instead, Respondent contends that the Supreme Court has recognized the discretion afforded to trial court judges on issues of *voir dire.*  (*Id.*)  Lastly, Respondent points to a recent Eastern District of New York case, *Ryer v. LaValley*, No. 14-CV-631, 2017 WL 541414, at *13–14 (E.D.N.Y. Jan. 20, 2017), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 20, 2017), that "recently rejected an identical claim by a habeas petitioner."  (*Id.*)

"No hard-and-fast formula dictates the necessary depth or breath of *voir dire*."  *Skilling v. United States*, 561 U.S. 358, 386 (2010); *see United States v. Woods*, 299 U.S. 123, 145–46 (1939) ("Impartiality is not a technical conception.  It is a state of mind.  For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.").  The Supreme Court has "repeatedly emphasized" that jury selection "is particularly within the province of the trial judge."  *Skilling*, 561 U.S. at 386 (internal quotation marks omitted); *see Ristaino v. Ross*, 414 U.S. 589, 594–95 (1976) ("The 'determination of impartiality . . . is particularly within the province of the trial judge.'" (quoting *Rideau v. Louisiana*, 373 U.S. 723, 733 (1963) (Clark, J., dissenting))).  Further, the Supreme Court has made clear that states enjoy "broad discretion" to "prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long

31

as it may be fairly said that the jury lists or panels are representative of the community." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975); *see Berghuis v. Smith*, 559 U.S. 314, 332 (2010) (holding the petitioner could not sustain a claim for violation of the Sixth Amendment pursuant to the state court's practice of excusing potential jurors who "merely alleged hardship"); 28 U.S.C. § 1863(b)(5)(A) (granting courts discretion to pre-screen jurors by "class or group" to determine if serving on the jury "would entail undue hardship or extreme inconvenience").

Petitioner has failed to cite, nor can the Court find, any case from the Supreme Court that has held that a defendant's Sixth Amendment right to a trial by an impartial jury was violated where the trial court excused a small number of potential jurors on the grounds of hardship without making further inquiry into those hardship claims.  Nor has Petitioner cited or the Court found any case from the Supreme Court that has held that such excusal of prospective jurors is an abdication of judicial responsibility.  Therefore, the Court cannot find that the Appellate Court's rejection on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).

Petitioner's citation to New York Judiciary Law § 517 is unpersuasive as the Court's inquiry revolves around Supreme Court precedent and federal law, not state law.  Further, New York Judiciary Law § 517 only allows a judge to "in his or her discretion . . . excuse [a] prospective juror" upon application by considering whether "attendance for jury service in accordance with the summons would cause undue hardship or extreme inconvenience to the applicant."  N.Y. Judiciary L. § 517.  Contrary to Petitioner's contention, the state law does not require a trial court to "make individual hardship assessments of the prospective jurors."  (Objs. 14.)  *See King*, 27 N.Y.3d at 156 (finding the trial court's procedure, where it inquired of the prospective jurors as to whether any hardship would prevent them from serving, did not deviate from New York law or deprive the defendant of a fundamental right); *People v. Morrow*, 39

32

N.Y.S.3d 232, 234 (App. Div. 2016) (finding "the [trial] court complied with Judiciary Law §

517(c) in exercising its discretion to excuse prospective jurors based on claimed hardship"

without making individualized assessments or inquiring further); *People v. Wilson*, 484 N.Y.S.2d

733, 736–37 (App. Div. 1985) (finding that pursuant to Judiciary Law § 517, "the trial court

may, in its discretion, excuse a prospective juror from jury service, and in determining an

application from a prospective juror to be excused it *may* consider facts indicating that

attendance for jury service would cause undue hardship or extreme inconvenience" (emphasis

added) (internal quotation marks and citations omitted)).

      Moreover, even if the Trial Court erred by discharging the four jurors, this error would

not violate clearly established Supreme Court precedent unless some constitutional defect existed

with the constituted jury. *See Ross v. Oklahoma*, 487 U.S. 81, 86 (1988) ("Any claim that the

jury was not impartial . . . must focus not on [the removed jurors], but on the jurors who

ultimately sat.").  Petitioner does not make any challenge to the composition or impartiality of

the selected jury, instead focusing solely on the excusal of the four prospective jurors.

      The Court's findings align with the holdings of several cases from the Eastern District of

New York which faced the exact same challenge to a state judge's failure to question prospective

jurors before excusing them from service due to hardship. *See Xochimitl v. Miller*, No. 20-CV-

5510, 2023 WL 9547871, at * 6 (E.D.N.Y. Oct. 30, 2023) (finding the petitioner's claim that the

"trial court's dismissal of potential jurors based on their alleged scheduling conflicts . . . is not a

procedure that violates the Constitution" and the petitioner's Sixth Amendment right to an

impartial jury), *report and recommendation adopted*, 2024 WL 94433 (E.D.N.Y. Jan. 9, 2024);

*Harris v. Great Meadow Corr. Facility*, No. 17-CV-760, 2020 WL 1000066, at *5–6 (E.D.N.Y.

Mar. 2, 2020) (holding that the Appellate Division's decision rejecting the petitioner's argument

that the trial court judge erred when it did not question two prospective jurors who raised their

hands to indicate "personal hardship" and were excused, without objection from either side, was "not contrary to, or . . . an unreasonable application of, clearly established Federal law" nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (internal quotation marks omitted)); *Bridges v. Lee*, No. 15-CV-4669, 2019 WL 11816536, at *7–8 (E.D.N.Y. Aug. 26, 2019) (finding the trial court "did not abdicate its judicial function when it asked jurors one question about any personal hardships prior to formal *voir dire* questioning, and then dismissed jurors based on that answer to that question" and that the petitioner "failed to show that the Appellate Division's decision on the merits of this claim runs contrary to any Supreme Court precedent that addresses *sua sponte* dismissing prospective jurors with a perceived hardship"), *report and recommendation adopted*, 2021 WL 688292 (E.D.N.Y. Feb. 23, 2021); *Ryer*, 2017 WL 541414, at *13–14 (holding that the Appellate Division's rejection of the petitioner's challenge to the trial court's allowance of prospective jurors "to opt out at will from serving on the jury due to their own perceived hardship" aligned with Supreme Court precedent and therefore not "contrary to, nor based on an unreasonable application of, clearly established federal law" (internal quotation marks and citation omitted)).

Therefore, the Court finds the Appellate Court's merits determination that Petitioner's *voir dire* claim was "without merit" was not "contrary to, or involved an unreasonable application of, clearly established Supreme Court law." *Bristol*, 30 N.Y.S.3d at 960; 28 U.S.C. § 2254(d)(1).

#### ii.   Prosecutorial alleged misconduct during summation

Petitioner argues first, that the "prosecution's lengthy summation contained egregious comments which cumulatively served to deprive the [P]etitioner of a fair trial." (Objs. 15.) He contends the "prosecutor[']s comments were geared to garner sympathy and instill fear in the members of the jury" "[b]y denigrating Petitioner, resorting to name calling, and proposing to the

34

jurors that they and their neighborhoods would not be safe unless they convicted the

[P]etitioner." (*Id.*) Petitioner argues that these actions "drew the juror's attention away from the

actual evidence adduced at trail, thereby unfairly prejudicing the [P]etitioner." (*Id.*) Second,

Petitioner contends that "the prosecution essentially asked the jurors to disregard the

inconsistencies in the People's case, namely the testimony of the People's witnesses, thereby

lessening their burden of proof." (*Id.*) Petitioner explains that the Trial Court overruled

"defense counsel's objections and gave no curative instruction to the jury panel." (*Id.*) In

addition, Petitioner objects to the R&R, arguing that Judge Bloom did not address "the

impermissible shifting or lessening of the prosecution's burden of proof."[23] (*Id.* at 15–16.)

---

[23] In the Petition, Petitioner did not make an argument regarding alleged prosecutor comments "impermissible shifting or lessening of the prosecution's burden of proof." (Objs. 16.) Therefore, Judge Bloom would not have addressed the issue in the R&R. This is also the first time Petitioner is making this argument in front of any court, and thus the claim is unexhausted.

Regardless, upon review of the trial transcripts, the Court finds no relevant comments by the prosecutor asking the jury to shift or lessen the prosecution's burden. (*See* Trial Tr. 812–46.) In fact, the prosecutor stated that the "standard in this case is proof beyond a reasonable doubt" and "submitt[ed]" to the jury that was present in both robberies. (*Id.* at 825–26.) Petitioner also fails to point to specific comments made by the prosecutor that allegedly "shifted or lessened" the prosecution's burden of proof. There is also no objection by defense counsel regarding something the prosecutor said involving the burden of proof or legal standard. Therefore, there is nothing for the Court to review for prosecutorial misconduct.

Further, urging the jurors to disregard inconsistencies and discrepancies between the testimony of different witnesses in favor of other evidence is a comment about the jury's factual determination, and does not impact the prosecution's burden of proof or the legal standard involved. *See United States v. Cacace*, 796 F.3d 176, 192 (2d Cir. 2015) ("Assessments of witness credibility and choices between competing inferences lie within the province of the jury."); *United States v. Hernandez*, 588 F.2d 346, 349 n.2 (2d Cir. 1978) ("Inconsistencies or discrepancies between a witness or between the testimony of different witnesses may or may not cause the jury to discredit such testimony."); *United States v. Persico*, 349 F.2d 6, 11 (2d Cir. 1965) ("The standards for evaluating the guilt or innocence of a defendant are not applicable in determining the credibility of a witness."). Defense counsel similarly made arguments urging the jurors to disregard inconsistencies and discrepancies about Petitioner's case. (Trial Tr. 788–90, 794–96, 800–01, 805–07.)

Moreover, the Trial Court's instructions asked the jury to determine the facts based on "all of the evidence in this case, both the sworn testimony that you heard from the witnesses, the

Lastly, Petitioner argues that, "[t]aken as a whole, the cumulative effect of the prosecution's closing comments infected the trial with unfairness, which resulted in an unjust verdict," "improperly and impermissibly infringed on [P]etitioner's constitutionally guaranteed rights as articulated in the Fifth and Sixth Amendment," and "breach[ed] [ ] Due process." [24]  (*Id.* at 16.)

Respondent argues first, that Petitioner's prosecutorial misconduct on the summation claim is procedurally barred as found by the Appellate Division.[25]  (Objs. Resp. 1 (citing R&R 9–10, 11–14).)  Second, Respondent contends that the Court should adopt Judge Bloom's "well-reasoned R&R" in its entirety for the reasons stated within the R&R and for the reasons stated "in [R]espondent's memorandum of law" submitted in opposition to the Petition.  (*Id.* (citing Resp.'s Mem. in Opp'n to Petition 13–17).)  Third, as to the arguments advanced in Respondent's Answer, Respondent argues that each of the different types of comments Petitioner points to "did not unfairly prejudice [P]etitioner or render the entire trial a denial of due process."  (Resp.'s Mem. in Opp'n to Petition 23–27.)

---

exhibits that were accepted into evidence and the stipulations," charged the jury with determining whether the prosecution has "satisfied their burden of proving the defendant's guilt beyond a reasonable doubt . . . consider[ing] all of the evidence presented," and reminded the jury that "the defendant is not required to prove that he is not guilty . . . [or] to prove or disprove anything." (*Id.* at 847–857.)  Defense counsel did not object to the jury charge. (*Id.* at 882.)

As a result, the Court does not address Petitioner's argument regarding alleged prosecutor comments "impermissible shifting or lessening of the prosecution's burden of proof" further. (Objs. 16.) *See Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998) (finding that even if the prosecution's remarks impacted the burden of proof, the trial judge's instruction to "the jury that the burden of proof always rests with the prosecution and that the attorneys' arguments on summation are not evidence and, therefore, that the jury should not base its verdict on them" "were probably sufficient to cure any harm that the prosecutor's misstatements may have caused").

[24]  Petitioner does not dispute that his prosecutorial misconduct argument was unpreserved for appellate review.

[25]  For the reasons explained in *supra* footnote 19, the Court reviews the merits of the claim although the Appellate Division found the claim to be unpreserved.

36

When faced with a challenge to remarks made by the prosecutor during closing statements, "'it is not enough that the prosecutors' remarks were undesirable or even universally condemned' . . . [t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted); *see also Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990) (It is a "rare case[] where the improper comments in a prosecutor's summation were so numerous and, in combination, so prejudicial" that they support granting a habeas petition.). "[T]o be entitled to habeas relief, [a petitioner] must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). "In assessing whether this standard has been met, it is relevant to consider a host of factors which include: (1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.* (citing *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991)). The Supreme Court has found that courts have discretion to determine whether a prosecutor's conduct rises to the level of denying the defendant a fair trial. *Parker*, 567 U.S. at 48 ("[B]ecause the *Darden* standard is a very general one, [ ] courts [have] 'more leeway . . . in reaching outcomes in case-by-case determinations.'" (quoting *Yarborough*, 541 U.S. at 664)). "The habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermining the fairness of the proceedings when viewed in context." *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014); *see Bentley*, 41 F.3d at 824 (advising that the determination of whether a petitioner has shown "actual prejudice" is a consideration "in light of the totality of the circumstances surrounding the trial court conviction"

(first citing *Samuels v. Mann*, 13 F.3d 522, 526–27 (2d Cir. 1993); and then citing *Henry v. Speckard*, 22 F.3d 1209, 1215 (2d Cir. 1994)).  However, "it is important 'as an initial mater to place th[e] remar[k] in context.'" *Greer v. Miller*, 483 U.S. 756, 766 (1987) (alterations in original) (quoting *Darden*, 477 U.S. at 179 (noting the helpfulness of placing the prosecutor's remarks during closing argument that came at the end of several days of trial).  Further, "the idea of 'invited response' is used not to excuse improper comments, but to determine their effect on the trial as a whole." *Darden*, 477 U.S. at 182 (quoting *United States v. Young*, 470 U.S. 1, 105 (1985)) (explaining that "[t]he prosecutors' comments must be evaluated in light of the defense argument that preceded it").

The Court construes the Petition and Petitioner's objections to be related to the following types of comments made by the prosecutor: (1) denigration of the defense's case and bolstering of the prosecution's case, such as arguing the defense theory was "crazy" and "ridiculous"; (2) attacks on the Petitioner's credibility, reputation, character, such as calling Petitioner a "coward," "shlep," and "bully"; and (3) appeals to the jury to protect the community from Petitioner, such as "urg[ing] the jurors to convict [Petitioner] and keep their neighborhoods safe.[26]  (*See* Pet. 8.) The Court considers the cumulative impact of these improper remarks as a whole.  *See Bentley*, 41 F.3d at 824 (determining actual prejudice "in light of the totality of the circumstances"); *Floyd*, 907 F.2d at 353 (considering the "cumulative effect of the three alleged categories of improper remarks").

Considering the "severity of the prosecutor's conduct," the Court condones the prosecutor's various comments as inappropriate.  However, the Court cannot find that "the

---

[26]  *See supra* Section I.a.iii.2 for a more detailed discussion of the prosecutor's remarks on summation.  Petitioner does not object to Judge Bloom's findings in the R&R related to the prosecutor's statements related to the gun, and therefore the Court does not address the remark. *See supra* Section II.b.

38

prosecutors' comments so infected the trial with unfairness." *Darden*, 477 U.S. at 181.  When looking at the remarks in context, the prosecutor's comments were made only during summation, following several days of trial, and were stated at short moments sprinkled throughout the entire closing argument, which comprises approximately thirty-four pages of transcript and 850 lines. *See Darden*, 477 U.S. at 179 ("It is helpful as an initial matter to place these remarks in context. Closing argument came at the end of several days of trial."); *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998) (finding "the prosecutor's comments were short and fleeting" and "thus much less likely to have had a substantial effect on the jury's verdict"); *Bentley*, 41 F.3d at 825 (denying habeas relief where the "prosecutor's summation comments were both brief and isolated); *McLean v. Green*, No. 05-CV-5603, 2009 WL 4778824, at *10 (E.D.N.Y. Apr. 15, 2009) (holding the challenged summation remarks "were short statements in the context of a long trial" and therefore likely did not prejudice the petitioner), *report and recommendation adopted*, 2009 WL 4854512 (E.D.N.Y. Dec. 9, 2009); *cf. Berger v. United States*, 295 U.S. 78, 84–85, 89 (1935) (granting habeas relief where the prosecutor's "pronounced and persistent" misconduct throughout the trial and during summation prejudiced the defendant); *Floyd*, 907 F.2d at 354 (granting habeas relief where the prosecutor made inflammatory comments "literally dozens of times throughout her opening and closing summations").  Even defense counsel made a comment about the trial as a whole stating that the prosecutor "gave the defendant a fair trial and I thank her for that."  (Trial Tr. 811.)

Moreover, the prosecutor's comments were made following defense counsel's summation which itself was inflammatory and accusatory, suggesting that the police, the deoxyribonucleic acid ("DNA") examiner, and the victims were all involved in a scheme to lie and pin the crime on Petitioner.  (*Compare* Trial Tr. 788–89, 791, 800–01 (discussing how to know if witnesses are lying and the police planted evidence, attacking the prosecution's theory as "ridiculous," and

explaining the case as an organized effort to lie and implicate Petitioner), with Trial Tr. 814, 821, 830, 832, 842 (discussing the defense's theory, calling it a "conspiracy").) *See Darden*, 477 U.S. at 179 ("The prosecutors' comments must be evaluated in light of the defense argument that preceded it, which blamed the Polk County Sheriff's Office for a lack of evidence, alluded to the death penalty, characterized the perpetrator of the crimes as an 'animal,' and contained counsel's personal opinion of the strength of the State's evidence."); *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998) ("Defendant cannot now complain about the issues raised and the atmosphere created by his own making through the defense summation."). Therefore, arguably, the defense counsel's summation attacking the credibility of the witnesses and the evidence "invited" the prosecutor's remarks attacking the defense's theory. *See Darden*, 477 U.S. at 182 ("Much of the objectionable content was invited by or was responsive to the opening summation of the defense."); *Gonzalez*, 934 F.2d at 424 ("[T]o the extent that [the prosecutor] argued that [the key prosecution witness] had no reason to lie, the defense's summation invited this response by arguing that [the witness] had testified only to impress the other key prosecution witness. In this context, the prosecutor's response is unlikely to have affected the jury's ability to judge the evidence fairly."); *United States v. Clark*, 613 F.2d 391, 405 (2d Cir. 1979) ("Where a substantial portion of the defense summation is devoted to attacks upon government witnesses . . . the prosecutor is entitled to make an appropriate response."); *Ramos v. Keane*, No. 92-CV-9111, 1994 WL 97080, at *4 (S.D.N.Y. Mar. 23, 1994) ("[A] prosecutor may present what . . . amounts to a boisterous argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon the government or its witnesses." (internal quotation marks and citation omitted)). Lastly, the comments themselves "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused." *Darden*, 477 U.S. at 182; *cf. Berger*, 295 U.S. at 84–85 (granting habeas relief where the

40

prosecutor misstated the facts, bullied and argued with the witnesses, and who's summation "was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury"); *Floyd*, 907 F.2d at 356 (granting habeas relief where the prosecutor's remarks included erroneous statements of law and "implicated [the petitioner's] specific constitutional right to remain silent").

In addition, the Trial Court took certain actions to remedy the conduct and defense counsel made no objections to any of these comments during the prosecutor's summation[27] or to the Trial Court's jury instructions; therefore, there was no further action the Trial Court would have taken.  Regardless, the Trial Court advised the jury numerous times that both the prosecutor's and defense counsel's statements were not evidence to be considered.  (*See* Trial Tr. 787 (The Trial Court instructed the jury that, similar to opening statements, "closing statements are [ ] not evidence."), 791 (Upon the prosecutor's objection to a remark made by defense counsel during his summation, the Trial Court overruled the objection and stated to the jury "[t]his is the attorney's argument to you . . . [y]ou are free to accept or reject it.").)  In fact, defense counsel objected to other statements made by the prosecutor during her summation which the Trial Court overruled, holding the statements were "argument and the jury's recollection will control."  (Trial Tr. 824.)  Therefore, even given the inappropriateness of the prosecutor's remarks, the Trial Court took curative steps to remedy any potential prejudice imposed upon the jury.  *See Darden*, 477 U.S. at 182 ("The trial court instructed the jurors

---

[27] Defense counsel objected only three times during the prosecutor's summation: (1) to the statements about the gun, (Trial. Tr. 819); (2) to the statements about the gun "killing somebody," (*id.* at 819–20); and (3) to the statements about the arrests of Petitioner and Beckford, (*id.* at 823–24).  None of these objections involved the statements that Petitioner challenges in the Petition, involving the prosecutor's comments: (1) denigrating of the defense's case and bolstering of the prosecution's case; (2) characterizing Petitioner; and (3) appealing to the jury to protect the community from Petitioner.

several times that their decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence."); *see also Rosario v. Laclair*, No. 20-CV-5475, 2024 WL 4476165, at *11 (S.D.N.Y. Oct. 11, 2024) (denying habeas relief holding "the trial court's instructions mitigated any risk of prejudice to petitioner from the prosecutor's comments" because it "explained to the jury that counsel's arguments and opinion could not be considered as evidence and that the jury's recollection, interpretation, and views of the evidence were controlling"); *Ryer*, 2017 WL 541414, at *18 (finding the "trial court ameliorated any unfair prejudice that might have been caused by the prosecutor's summation" by instructing the jury that the attorneys statements are not evidence).

Finally, in determining whether the conviction was "certain absent the prejudicial conduct," *Bentley*, 41 F.3d at 825, Petitioner himself has acknowledged that he was facing "overwhelming evidence of guilt." (Aff. in Supp. of 440 Motion, appended to Objs. in Ex. B ("[A]s the record rightfully reflects, [Petitioner] was dealing with a case that had overwhelming evidence of guilt.").) The prosecutor presented a case that involved direct testimony from the victims and responding police officers, including each's identification of the perpetrators, Petitioner's DNA evidence on the weapon and stolen items, including testimony from the DNA examiner, and the fact that the stolen items were found in the possession of Petitioner and his codefendant. (*See* Pet'r's Mem. in Supp. of Direct Appeal SR 009–014.) Given the weight of the evidence against Petitioner, the Court cannot find that the prosecutor's summation remarks likely had a substantial impact on the jury's determination. *See Darden*, 477 U.S. at 182 ("The weight of the evidence against petitioner was heavy; the overwhelming eyewitness and circumstantial evidence to support a finding of guilt on all charges, reduced the likelihood that the jury's decision was influenced by argument." (internal quotation marks omitted)); *Donnelly*, 416 U.S. at 645 (holding that a prosecutor's inappropriate remarks did not support finding the

42

challenged "trial so fundamentally unfair as to deny [ ] due process" as it recognized "that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge"); *Tankleff*, 135 F.3d at 253 (denying habeas relief finding the petitioner had "not met his burden of showing that he was substantially prejudiced by [ ] admittedly improper [] comments" holding the Second Circuit was "not prepared to say that this is a case in which the evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury"); *Bentley*, 31 F.3d at 823 (denying habeas relief where "[t]he evidence of guilt introduced by the prosecution in this case was overwhelming"); *Ryer*, 2017 WL 541414, at *18 (holding that the prosecutor's "case rested largely on the presentation of DNA evidence" and the "perceived strength of that evidence in the eyes of the jury likely influenced their verdict more than any provocative remarks offered by the prosecutor during his summation"). Consequently, the Court cannot find that Petitioner "suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley*, 31 F.3d at 824.

Therefore, Petitioner has failed to show that the Appellate Division's finding that the prosecutor's comments "were not so flagrant or pervasive as to deprive [Petitioner] of a fair trial" was "contrary to, or involved an unreasonable application of, clearly established Supreme Court law." 28 U.S.C. § 2254(d)(1). *See Darden*, 477 U.S. at 183 (affirming denial of habeas petition because while "[the petitioner]'s trial was not perfect — few are — [ ] neither was it fundamentally unfair").

### e.   New arguments not raised in the Petition

Petitioner raises three new arguments in his objections to the R&R: (1) lack of a grand jury indictment; (2) ineffective assistance of trial counsel for failing to preserve a prosecutorial

misconduct objection; and (3) ineffective assistance of appellate counsel for failing to raise an ineffective assistance of trial counsel claim for trial counsel's failure to preserve a prosecutorial misconduct objection.  (Objs. 5.)

Respondent argues that the "Court should disregard the many new arguments and claims asserted in the [o]bjections . . . because they were not raised before Judge Bloom."  (Objs. Resp. 2.)  Regardless, even if the Court were to consider these new arguments, Respondent contends the "new claims are either unexhausted, procedurally barred, or wholly without merit."  (Supp. Objs. Resp. 1.)

"[A] district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)); *see also Wilson v. Lamanna*, No. 21-CV-10714, 2026 WL 282348, at *1 (S.D.N.Y. Feb. 3, 2026) (quoting *id.*).  "[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all."  *Razzoli*, 2014 WL 2440771, at *5 (citing *Forman v. Artuz*, 211 F. Supp. 2d 415, 418 n.8 (S.D.N.Y. 2000)); *see Ortiz*, 558 F. Supp. 2d at 451 (collecting cases) (holding that an objection to a report and recommendation is "not the vehicle by which new claims for habeas relief are to be presented" and should not be considered).  "To consider new legal arguments at this point would undermine 'the authority of the [m]agistrate [j]udge by allowing litigants the option of waiting until a [r]eport is issued to advance additional arguments.'"  *Gonzalez v. Garvin*, No. 99-CV-11062, 2002 WL 655164, at *2 (S.D.N.Y. Apr. 22, 2002) (quoting *Abu-Nassar v. Elders Futures, Inc.*, No. 88-CV-7906, 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994)).

While the Court is entitled to decline to review Petitioner's new arguments which were improperly raised in objection to Judge Bloom's R&R, "[b]ecause Petitioner is proceeding *pro se*, however, and in the interest of justice, the Court [will] consider[] his new arguments." *Roukis v. U.S. Army*, No. 10-CV-2219, 2014 WL 6238416, at \*6 (S.D.N.Y. Nov. 14, 2014) (considering the merits of *pro se* petitioner's new arguments raised in his objections to the magistrate judge's report and recommendation on petitioner's habeas petition); *see Thomas v. Colcott*, No. 24-CV-824, 2026 WL 705487, at \*4 (N.D.N.Y. Mar. 13, 2026) (same), *appeal docketed*, No. 26-1058 (2d Cir. Apr. 23, 2026); *Gonzalez-Alvarez v. Eckert*, No. 17-CV-9773, 2023 WL 3505541, at \*4 (S.D.N.Y. May 17, 2023) (same); *Ortiz*, 558 F. Supp. 2d at 451 (same); *Robinson v. Keane*, No. 92-CV-6090, 1999 WL 459811, at \*4 (S.D.N.Y. June 29, 1999) (same).

### i. Lack of grand jury indictment

Petitioner first argues that Respondent's Answer "revealed to Petitioner grounds for relief that the [P]etitioner was unaware of" — that is, "that an indictment does not exist." (Objs. 5; *see generally* Answer.)  Petitioner contends "[t]he lack of a [g]rand [j]ury indictment is a [c]onstitutional violation that goes to the existence of the [T]rial [C]ourt's jurisdiction" and "constitutes the denial of the first and foremost universal requirement of [d]ue [p]rocess in New York, which is the filing a [g]rand [j]ury voted indictment." (Objs. 5–6.)  Specifically, Petitioner alleges that "Respondent has not affirmatively shown that the [Trial] Court was a court of competent jurisdiction, by filing with the Answer an indictment of a [g]rand [j]ury that would demonstrate that the [T]rial [C]ourt acquired jurisdiction in the instant case to arraign, try, convict and sentence." (*Id.* at 6.)  In support, Petitioner included, as Exhibit A, the underlying certified Criminal Complaints, (Criminal Complaint I; Criminal Complaint II), and, as Exhibit C, the underlying indictment, (Indictment).  Second, Petitioner argues the Criminal Complaints and Indictment were insufficient because he alleges "he was not charged and arraigned" for criminal

45

possession of a weapon.  (Objs. 7.)  Third, Petitioner argues that he was entitled to a prompt hearing following the filing of the Criminal Complaints which he did not receive because the Trial Court failed "to implement its affirmative duty to inform Petitioner of his right to counsel and of the procedure for obtaining representation."  (*Id.* at 8.)  Petitioner alleges that because of this deprivation, he was "arraigned . . . without counsel" and "unable to use at trial the testimony of . . . prosecution witnesses."  (*Id.*)  Fourth, Petitioner alleges that the grand jury voted "[n]o [b]ill" and therefore "[t]here was no criminal charges filed that would commence a criminal action."  (*Id.*)  Petitioner further contends that the "[g]rand [j]ury [f]oreperson refused to authenticate the indictment with the required signature."  (*Id.*)  Lastly, Petitioner argues "[t]he deprivation of Petitioner's substantial right to be tried only on charges presented in an indictment returned by a [g]rand [j]ury is far too serious to be treated as nothing more than a variance and then dismissed as harmless error."  (*Id.* at 9.)

First, Respondent argues that Petitioner never asserted his challenge to the Criminal Complaints and Indictment in his Direct Appeal and thus they are unexhausted.  (Supp. Objs. Resp. 10.)  Second, Respondent contends that an unexhausted claim that can no longer be presented to the state court is barred from federal habeas review.  (*Id.* at 10–11.)  Therefore, the claim should be "deemed exhausted" and "procedurally defaulted."  (*Id.* at 11.)  Third, Respondent contends that Petitioner has failed to show either (1) "cause for his default and actual prejudice therefrom" or (2) "that the habeas court's failure to consider his claim will result in a fundamental miscarriage of justice because he is 'actually innocent' of the crimes of conviction" which would allow the Court to consider the merits of the defaulted claim.  (*Id.*)  Lastly, Respondent contends that Petitioner's claim is meritless because the Fifth Amendment's grand jury requirement has not been applied to the states by incorporation through the Due Process Clause of the Fourteenth Amendment and therefore, "[b]ecause there is no federal constitutional

46

right to indictment by a state grand jury, the lack of such a charging instrument does not give rise to a claim cognizable on habeas review." (*Id.*)

### 1.    Procedural default

Generally, a state prisoner may not obtain federal habeas relief unless that prisoner has exhausted the available remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("[P]risoners must ordinarily exhaust state remedies before filing for federal habeas relief."). To exhaust all state remedies, a petitioner must present the claim to the highest court in the state (after preserving it in accordance with state law) and specifically inform the court (and the lower courts before it) of the bases for the federal claim. *Ramirez v. Att'y Gen. of N. Y.*, 280 F.3d 87, 94 (2d Cir. 2001); *see also Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) ("Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011))). Where a petition contains both exhausted and unexhausted claims, generally the "mixed petition" should be dismissed to allow the petitioner to proceed to state court to exhaust all claims.[28] *Rose v. Lundy*, 455 U.S. 509, 516, 521 (1982).

However, where a state prisoner "has no further state avenues in which to press [an] issue because" the prisoner failed to raise the claim in a particular proceeding and the opportunity for the prisoner to do so has passed, courts will consider the claim "exhausted but procedurally defaulted." *Jackson*, 763 F.3d at 143–44 (citing *Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003)); *see also Aparicio*, 269 F.3d at 90 (explaining that "if it is clear that the unexhausted

---

[28] Under certain circumstances, a district court might instead stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust this previously unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 275–78 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)).

claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile," a federal court may deem the claim exhausted but procedurally defaulted (citations omitted)); 28 U.S.C. 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless . . . (A) the applicant has exhausted all remedies available . . . or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."). The most common circumstance involves the failure to bring a claim that could have been brought on direct appeal: such a claim "is now exhausted because state remedies are no longer available" as a consequence of the petitioner having "already taken his one direct appeal," but the claim is "not '*properly* exhausted'" because the claim was not "fairly present[ed] . . . to the state courts" on direct appeal, causing the claim to become "procedurally barred from consideration in a collateral attack." *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). Under New York law, a claim must be brought, if at all, on direct appeal if "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion." C.P.L. § 440.10(2)(c); *see also Sweet*, 353 F.3d at 139 ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record."). While New York permits a defendant to file a *coram nobis* petition to vacate an order determining an appeal on the basis that he was deprived of effective assistance of appellate counsel, "that procedural vehicle does not 'fairly present' the underlying claim to the state court." *Dominique v. Artus*, 25 F. Supp. 3d 321, 331 (E.D.N.Y. 2014) (citing *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)); *see also Jamison v. Auburn Corr. Facility*, No. 10-CV-344, 2015 WL 8770079, at *18 (E.D.N.Y. Dec. 14, 2015) (same). A procedurally defaulted

48

claim is not reviewable, unless the petitioner demonstrates "cause and actual prejudice" for the default, or shows that the failure to consider the claim would result in a miscarriage of justice because the petitioner "is actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (citing *Bousley v. United States*, 523 U.S. 614 (1998)); *see also Aparicio*, 269 F.3d at 90 (in order to avoid having his habeas claim dismissed as procedurally defaulted, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)" (citing *Coleman v. Thompson*, 501 U.S. 722, 748–50 (1991))).

Petitioner did not present any of his claims regarding the sufficiency of the Criminal Complaints, the Indictment, or his access to counsel during arraignment on his Direct Appeal or to a state court otherwise for review. Therefore, the Court finds these claims unexhausted. *See Ramirez*, 280 F.3d at 94 ("To exhaust all state remedies, a petitioner must present the claim to the highest court in the state (after preserving it in accordance with state law) and specifically inform the court (and the lower courts before it) of the bases for the federal claim."); *Dupree v. Royce*, No. 20-CV-1443, 2023 WL 8934877, at *7 (E.D.N.Y. Dec. 27, 2023) (finding the petitioner's grand jury claims as unexhausted because he failed to raise the claims on direct appeal, although ultimately held they were procedurally defaulted); *Legree v. Thompson*, No. 20-CV-6059, 2023 WL 8005739, at *6 (W.D.N.Y. Nov. 17, 2023) (finding the petitioner's grand jury claims as unexhausted because he did not present his claims on his direct appeal in state court); *Hall v. Woods*, No. 07-CV-9264, 2011 WL 8199916, at *9 (S.D.N.Y. Apr. 29, 2011) (finding the petitioner's grand jury claim was unexhausted because he "failed to raise this claim with the highest court of the state," and therefore held that the claim was procedurally defaulted), *report and recommendation adopted*, 2012 WL 2864505 (S.D.N.Y. July 12, 2012).

However, the Court deems the claims exhausted, rather than dismissing the petition to give Petitioner a chance to exhaust this claim, because Petitioner lacks an "available [s]tate corrective process" to raise this claim.  28 U.S.C. 2254(b)(1)(B)(i); *see Jackson*, 763 F.3d at 143 (deeming the issue "exhausted but procedurally defaulted" because "[the petitioner] ha[d] no further state avenues in which to press this issue because he ha[d] completed his direct appeal and the nature of the claim [was] apparent from the face of the record, meaning that he would be barred from raising it in a motion to vacate the judgment"); *see also Coleman*, 501 U.S. at 735 n.1 (When a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claim procedurally defaulted.).  Petitioner has already exercised his one and only direct appeal and he cannot raise this claim pursuant to C.P.L. § 440.10(2)(c) because the claim could have been raised on direct appeal.  *See Sweet*, 353 F.3d at 139 ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.").  As a New York court would find the claim procedurally barred and Petitioner therefore lacks an available state corrective process for this claim, the Court treats the claim as unexhausted, but procedurally defaulted.  *See, e.g.*, *Jackson*, 763 F.3d at 143; *Aparicio*, 269 F.3d at 90–91 (quoting *Coleman*, 501 U.S. at 735 n.1); *Dominique*, 25 F. Supp. 3d at 331.

To cure the procedural default, Petitioner must either demonstrate cause for the default and actual prejudice, or show actual innocence.  *Clark*, 510 F.3d at 393; *Aparicio*, 269 F.3d at 91 (citing *Coleman*, 501 U.S. at 748–49); *see also Carew v. Morton*, 150 F.4th 150, 160 (2d Cir. 2025) ("A habeas petitioner may overcome procedural default by establishing 'cause and prejudice:' 'cause for the default and actual prejudice as a result of the alleged violation of

federal law.'" (quoting *Coleman*, 501 U.S. at 750)), *cert. denied*, No. 25-6626, 2026 WL 795253 (U.S. Mar. 23, 2026); *Gomez v. United States*, 87 F.4th 100, 107 (2d Cir. 2023) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." (quoting *Bousley*, 523 U.S. at 622)).  "A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default [but] only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel."  *Aparicio*, 269 F.3d at 91 (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)); *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986).  Thus, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edward*s, 529 U.S. at 451.

Petitioner has failed to demonstrate that both his trial counsel, in failing to properly preserve a claim for lack of a sufficient indictment, and his appellate counsel, in failing to argue on Direct Appeal, demonstrated "ineptitude" that "rises to the level of a violation of a defendant's Sixth Amendment right to counsel."  *Aparicio*, 269 F.3d at 91.  Even if ineffective assistance of trial counsel and appellate counsel could theoretically excuse Petitioner's failure to preserve the claim and/or raise the claim on Direct Appeal or to allow for state collateral review pursuant to C.P.L. § 440.10(2)(c), given the rejection of Petitioner's 440 Motion and *coram nobis* motion, "it is most unlikely that another state court would suddenly find the performance of Petitioner's appellate counsel to be so ineffective as to justify [P]etitioner's failure to include this . . . claim in his direct appeal."  *Id.* (finding the petitioner had no available State corrective process for his claims for these reasons).  The Appellate Division already determined in deciding Petitioner's 440 Motion that Petitioner had not been denied effective assistance of trial counsel,

51

although in connection with trial counsel's failure to preserve and/or more persuasively argue other claims. (Decision & Order on 440 Motion SR 444.) Moreover, the Appellate Division also already determined in the *coram nobis* proceeding that Petitioner had not been denied effective assistance of appellate counsel on his Direct Appeal, although in connection with appellate counsel's failure to raise a different argument on Direct Appeal, when appellate counsel focused on the three claims which afforded the Petitioner the best chance at either reversal or a reduced sentence. (Aff. in Opp'n of *Coram Nobis* Motion, appended in Supp. State Court Record SR 603–616; Mem. of Law in Opp'n to *Coram Nobis* Motion, appended in Supp. State Court Record SR 617–633; Decision & Order on *Coram Nobis* Motion SR 670.)

Moreover, Petitioner offers no explanation, other than his own beliefs, as to why the Criminal Complaints, Indictment, and his arraignment are insufficient and constitute violations of his rights. In addition, Petitioner offers no further evidence to substantiate his claim that the grand jury voted "no bill" and he was ultimately never indicted such that the Court can assess the underlying merits of the claims to determine whether trial counsel and/or appellate counsel's failure to raise the issue rises to "ineptitude." (*See* Objs. 8.) In fact, a review of the Criminal Complaints and Indictment show that all counts the Petitioner was charged with are listed in both the Criminal Complaints and the Indictment, and the Indictment lists the grand jury's finding of "a true bill." (Criminal Complaint I; Criminal Complaint II; Indictment.) Therefore, Petitioner has not presented cause for the procedural default.

Nor has Petitioner demonstrated actual innocence, or that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Sweet*, 353 F.3d at 142 (citing *Bousley*, 523 U.S. at 623). "[T]he fundamental miscarriage of justice exception is 'extremely rare' and should be applied only in 'the extraordinary case[s].'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 321–22 (1995)). Petitioner has not presented additional exculpatory

52

scientific evidence, trustworthy eyewitness reports, or other critical evidence not presented at trial to establish his innocence. *Dominique*, 25 F. Supp. 3d at 332 (collecting cases discussing the type of evidence that would be required to demonstrate actual innocence). Instead, Petitioner, in his affidavit in support of his 440 Motion, stated that "as the record rightfully reflects, [Petitioner] was dealing with a case that had overwhelming evidence of guilt." (Aff. in Supp. of 440 Motion.) Thus, there is no cure for Petitioner's procedural default.

## 2. Merits

Even if Petitioner's claim was reviewable, claims of impropriety in a state grand jury proceeding are not cognizable in federal habeas proceedings because any harm is cured by the jury's conviction. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt."); *Lopez v. Riley*, 865 F.2d 30, 32–33 (2d Cir. 1989) (determining petitioner's claims of "deficiencies in the state grand jury proceedings," which concerned "the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in examining the law," were not cognizable in a habeas corpus proceeding because the alleged improprieties were harmless under *Mechanik* as each was cured in the trial before the jury, which convicted petitioner); *Hall*, 2011 WL 8199916, at *9 (dismissing the petitioner's challenge to grand jury proceedings because it was "not cognizable in a habeas corpus proceeding in federal court" as "any defect in the grand jury proceeding is cured by the consideration of all the evidence and the subsequent conviction by the petit jury at trial"); *Velazquez v. Poole*, 614 F. Supp. 2d 284, 331–32 (E.D.N.Y. 2007) (finding that a conviction by a petit jury renders harmless any errors in the grand jury process where the petitioner alleged that the prosecutor elicited perjurious testimony). In addition, courts have held that a petitioner's challenges to the sufficiency of the grand jury proceedings and/or

indictments do not provide grounds for habeas relief. *See Ocampo v. Lavalley*, No. 09-CV-5550, 2018 WL 1902326, *7 n.12 (E.D.N.Y. Apr. 19, 2018) (finding the petitioner's challenge to grand jury proceedings and indictment failed on the merits because alleged defects in a state grand jury proceeding generally cannot provide grounds for habeas relief); *Campbell v. Lee*, No. 11-CV-4438, 2013 WL 5878685, at *17 (S.D.N.Y. Oct. 11, 2013) (finding that the petitioner's defective indictment claims were not cognizable on habeas review because "a jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt"), *report and recommendation adopted*, 2014 WL 6390287 (S.D.N.Y. Nov. 17, 2014); *O'Diah v. Corcoran*, No. 09-CV-3580, 2013 WL 1339413, at *11 (E.D.N.Y. Mar. 29, 2013) (holding that the "petitioner's claims relating to alleged improprieties in the grand jury proceedings leading to the first and second indictments are not cognizable in a habeas proceeding").

Further, Petitioner's claim fails given Petitioner's failure to substantiate and support his claims that the Criminal Complaints, the Indictment and his arraignment were constitutionally deficient. The Court's independent review of all of the state court filings and transcripts, in addition to all of the filings in the Direct Appeal, 440 Motion, and *coram nobis* petition, also fail to show any evidence the Court can rely on to find a violation of Petitioner's rights. To the contrary, the record, reflected in the State Court Transcripts and Petitioner's own filings, directly refute many of Petitioner's claims, evidencing that the grand jury voted to indict the Petitioner and that the Indictment was filed with the Trial Court. (*Compare Coram Nobis* Motion SR 529 with Objs. 8 (discussing Petitioner's Indictment); *Coram Nobis* Motion SR 529 with Objs. 6 (discussing the filing of Petitioner's indictment).) As noted above, the Court's review of the Criminal Complaints and Indictment provides no reason for the Court to question the sufficiency

of either charging document, nor do the transcripts shed any light or mention such potential violations. *See Acosta v. Artuz*, 575 F.3d 177, 192 (2d Cir. 2009) (denying habeas petition finding the petitioner failed to meet his burden of unreasonable application of federal law and that he "must also bear the consequences of his failure to develop a more complete record on th[e] point"); *Sorto v. Herbert*, 497 F.3d 163, 167 (2d Cir. 2007) ("Because [the petitioner] bears the burden of demonstrating an unreasonable application of federal law, the insufficiency of the record defeats his petition."); *Wolfrath v. LaValle*, 576 F.2d 965, 971 (2d Cir. 1978) (denying petition holding "that petitioner has not sustained the burden imposed on a state habeas applicant to prove his constitutional claim"). The Court therefore denies Petitioner's claims regarding the grand jury indictment.

### ii. Ineffective assistance of trial counsel

Petitioner first argues he received ineffective assistance of trial counsel due to "[d]efense counsel only rais[ing] a general objection to the [prosecutor's] prejudicial remarks during summation" and failure "to make a specific objection that would preserve the prosecutorial misconduct claim for not only [a]ppellate review, but for habeas review as well." (Objs. 11.) He argues "[t]his [c]onstitutional error must lead to reversal, as the error contributed to the verdict." (*Id.*) Second, Petitioner contends that the "Appellate Division's rejection of the [p]rosecutorial [m]isconduct claim is entirely due to trial counsel's failure to preserve the claim for direct appeal," the rejection of which "is contrary to clearly established Supreme Court Law."[29] (*Id.* 12.)

---

[29] The Court notes that Petitioner's argument that the Appellate Division's rejection of the prosecutorial misconduct claim was "entirely due to trial counsel's failure to preserve the claim," (Objs. 11), is incorrect as the Appellate Division did opine on the merits of the claim. While the Appellate Division denied the Direct Appeal finding that Petitioner's prosecutorial misconduct claim was "unpreserved for appellate review," the Appellate Division held "[i]n any

Respondent argues that Petitioner's claim for ineffective assistance of trial counsel "should be rejected as wholly meritless."[30]  (Supp. Objs. Resp. 14.)   Respondent points to the Appellate Division's rejection on the merits of trial counsel's prosecutorial misconduct argument on Direct Appeal.  (*Id.* at 16–18.)  First, Respondent argues that Petitioner has failed to show that trial counsel's failure to object during the summation prejudiced him because the Appellate Division's "ruling that the challenged summation remarks had not called into doubt the reliability of the trial's outcome." (*Id.* at 16–17.)  Therefore, by holding on the merits that the prosecutorial misconduct claim failed, the Appellate Division "effectively ruled" that trial counsel's failure to preserve the argument did not prejudice Petitioner.  (*Id.* at 17–18.)  Respondent contends this is sufficient to deny Petitioner's ineffective assistance of trial counsel claim because "the Supreme Court has encouraged lower courts to dispose of ineffective counsel claims on lack of prejudice alone, without reaching the reasonableness of the attorney's conduct." (*Id.* at 17 n.6.)  Second, Respondent argues that, under Second Circuit law, "it is well-

---

event, while certain remarks made by the prosecutor were improper, they were not so flagrant or pervasive as to deprive [Petitioner] of a fair trial." *People v. Bristol*, 30 N.Y.S.3d 906 (App. Div. 2016). (Decision & Order of Direct Appeal.)

[30]  Respondent also argues that this is "[t]he only one of the three new habeas claims that [P]etitioner did present to the state courts" — that is "trial counsel's failure to object to the prosecutor's summation caused [P]etitioner to waive appellate review of those summation comments, to [P]etitioner's detriment." (Supp. Objs. Resp. 13–14.)  This is an overstatement. Petitioner raised his prosecutorial misconduct claims on Direct Appeal claiming a violation of his right to a fair trial. (*See* Pet'r's Mem. in Supp. of Direct Appeal SR 029–030.)  In one sentence, Petitioner claimed that, in the alternative, the Appellate Division "should reverse on the ground that [Petitioner] was denied the effective assistance of counsel by his attorney's inexcusable failure to object to the pervasive and blatant misconduct." (*Id.* at SR 030.)  The Appellate Division's decision and order addressed the prosecutorial misconduct claim holding it was unpreserved and unsuccessful on its merits. (Decision & Order of Direct Appeal SR 111–112.)  The Appellate Division did not address Petitioner's alternative argument.

In his leave application to appeal the denial of the Direct Appeal, Petitioner mentioned "to the extent this claim was unpreserved, counsel had failed to provide effective assistance." (Leave to Appeal Direct Appeal.)  The Appellate Division denied his request for leave to appeal. (Order denying Leave to Appeal Direct Appeal.)

settled that trial counsel cannot be found ineffective for failing to preserve a claim where, as here, the Appellate Division actually addressed the claim and denied it on the merits." (*Id.* at 17.) Respondent contends that the Appellate Division's denial of Direct Appeal on the merits proves that the Petitioner "cannot establish prejudice 'because, among other reasons, even if trial counsel had objected to the prosecutor's comments, [P]etitioner's challenge would have proceed unsuccessful on appeal . . . [because] the Appellate Division said so.'" (*Id.* at 18 (quoting *Flores v. Keane*, 211 F. Supp. 2d 426, 45 (S.D.N.Y. 2001)).) Lastly, Respondent argues that "decisions as to when to object and the grounds for doing so are primarily matters of trial strategy and tactics are not subject to challenge absent extraordinary circumstances." (*Id.* (citing *Broxmeyer v. United States*, 661 F. App'x 744, 748 (2d Cir. 2016)).) Therefore, "because objecting during the prosecutor's summation may call attention to the remarks at issue, counsel's decision not to object may be considered a reasonable trial strategy." (*Id.*)

As an initial matter, the Court notes its lack of clarity whether Petitioner's ineffective assistance of trial counsel claim can be deemed exhausted as it was raised on Direct Appeal in the alternative, but not decided or addressed by the Appellate Division. *See supra* footnotes 29, 30. If it were deemed exhausted, the Court would review to determine if the Appellate Division's decision is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). If it were deemed unexhausted, the Court would find it procedurally defaulted, similar to Petitioner's lack of a grand jury indictment claim, as this claim should have been argued directly in Petitioner's Direct Appeal. For the reasons stated above, *see* discussion *supra* Section II.e.i, the Court would find Petitioner has failed to demonstrate cause for the default and prejudice, especially considering appellate counsel included the argument on Direct Appeal but only as an argument

57

in the alternative, or to show actual innocence.  Ultimately, the Court need not determine whether the claim is exhausted or procedurally defaulted because, in the interests of justice, the Court will review Petitioner's claim for ineffective assistance of trial counsel and finds it would fail on the merits.[31]

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121–22 (2011) (same); *Purcell v. United States*, 158 F.4th 441, 449 (2d Cir. 2025) (same).  "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Buck*, 580 U.S. at 118 (citing *Strickland*, 466 U.S. at 687); *see also Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) ("To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice." (citing *Strickland*, 466 U.S. at 687)).  "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563 U.S. at 189 (first alteration in original) (quoting *Strickland*, 466 U.S. at 690); *see also Bell v. Cone*, 535 U.S. 685, 698 (2002) (stating that "'[j]udicial scrutiny of a counsel's performance must be highly deferential' and that 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the

---

[31]  Because the Court finds that Petitioner's ineffective assistance of trial counsel claim is meritless as Petitioner has failed to show prejudice, the Court does not address Respondent's argument that "decisions as to when to object and the grounds for doing so are primarily matters of trial strategy and tactics are not subject to challenge absent extraordinary circumstances" "because objecting during the prosecutor's summation may call attention to the remarks at issue, counsel's decision not to object may be considered a reasonable trial strategy."  (Supp. Objs. Resp. 18 (citing *Broxmeyer v. United States*, 661 F. App'x 744, 748 (2d Cir. 2016)).)

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time'" (alterations in original) (quoting *Strickland*, 466 U.S. at 689)); *Purcell*, 158 F.4th at 450 (quoting *Strickland*, 466 U.S. at 689) (same); *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Jackson*, 763 F.3d at 153) (same). While it is possible that, in certain instances, even "an isolated error" can support an ineffective assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111; *see also Carew*, 150 F.4th at 164 ("[E]ven if there is reason to think that counsel's conduct was far from exemplary, a court still may not grant relief if the record does not reveal that counsel took an approach that no competent lawyer would have chosen." (quoting *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam))).

The "highly deferential" *Strickland* standard is made "doubly" so on habeas review, as AEDPA requires deference to the state court's ruling. *Harrington*, 562 U.S. at 105; *Premo*, 562 U.S. at 122; *Santone v. Fischer*, 689 F.3d 138, 154 (2d Cir. 2012); *see also Clark v. Sweeney*, 607 U.S. 7, 10 (2025) ("When assessing a *Strickland* claim that a state court has already adjudicated, the analysis is doubly deferential." (internal quotation marks omitted)); *Dunn*, 594 U.S. at 739 (2021) ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately." (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013))). Thus, on habeas review, the question is not whether counsel's actions were reasonable, but "whether there is *any reasonable argument* that counsel satisfied *Strickland*'s deferential standard." *Wilson v. Sellers*, 584 U.S. 122, 137 n.1 (2018) (Gorsuch, J., dissenting) (quoting *Premo*, 562 U.S. at 123). "Surmounting *Strickland*'s high bar is never an easy task." *Lee v. United States*, 582 U.S. 357, 368 (2017) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)); *see Flores v. Bondi,* 152 F.4th 73, 80 (2d Cir. 2025) (quoting same).

59

Petitioner fails to show that he was prejudiced because he cannot show "but for his counsel's failure to preserve his [ ] claim, there is a reasonable probability that the claim would have been considered on appeal and, as a result, his conviction would have been reversed." *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012).  As the Second Circuit found in *Parker*, Petitioner "cannot make this showing [ ] because the Appellate Division *did*, implicitly, address this claim, even though it had not been preserved at trial." *Id.*  More strikingly similar is *Bierenbaum v. Graham*, 607 F.3d 36 (2d Cir. 2010), where the Second Circuit addressed a petitioner's claim for ineffective assistance of trial counsel for counsel's failure to preserve numerous claims including failure to object to summation remarks. *Id.* at 57–58.  The Second Circuit held that, where the Appellate Division reviewed the petitioner's claim despite it being unpreserved and found on the merits that his right to a fair trial was not deprived, the petitioner could not claim that his counsel was ineffective in failing to preserve the issue for appeal. *Id.* at 58.  This case presents the exact same scenario.  On Direct Appeal, the Appellate Division, despite the claim being unpreserved, addressed the merits of Petitioner's prosecutorial misconduct claim, holding it was meritless and did not deprive Petitioner of a fair trial.[32]  Therefore, the Court finds that Petitioner cannot satisfy the *Strickland* standard because, even if his trial counsel's failure to preserve his prosecutorial misconduct claim was objectively unreasonable, there is no reasonable probability that, but for that failure, the result of the claim on Direct Appeal would have been different. [33]

---

[32] As discussed *supra* Section II.d.ii, this holding is not "contrary to, or involved an unreasonable application, of clearly established Federal law."  28 U.S.C. § 2254(d)(1).

[33] The Supreme Court has advised lower courts to dispose of ineffective assistance of counsel claims on the issue of prejudice alone, without reaching the issue of the reasonableness of the attorney's conduct.  *Strickland v. Washington*, 466 U.S. 668, 697 (1984) ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the

### iii.    Ineffective assistance of appellate counsel

Petitioner first argues that his appellate counsel was ineffective for failing to raise, on Direct Appeal, that Petitioner's trial counsel was ineffective for not objecting during the prosecutor's summation.[34] (Objs. 12–13.)  Second, Petitioner argues that his claim for ineffective assistance of appellate counsel "serve[s] as cause to excuse a procedural default due to the violation of the Sixth Amendment right to counsel."  (*Id.* at 12.)

Respondent first argues that while Petitioner never exhausted this claim in state court, and Petitioner may still raise it in a subsequent *coram nobis* motion, the Court should "deny the claim as plainly meritless under § 2254(b)(2)."  (Supp. Objs. Resp. 12–13.)  Second, Respondent contends the ineffective assistance of appellate counsel claim is "plainly meritless" because "the record conclusively refutes the claim."  (*Id.* at 13.)  "Appellate counsel *did* argue on [D]irect [A]ppeal that trial counsel was ineffective for not objecting to the prosecutor's summation" and raised the issue in his application for leave to appeal.  (*Id.*)

The Court notes that this claim is unexhausted.  Both Petitioner's 440 Motion and his *coram nobis* motion do not address this claim, but instead raise other arguments involving the ineffectiveness of trial counsel and appellate counsel.  (*See* 440 Motion; *Coram Nobis* Motion.)

---

inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *see Garner v. Lee*, 908 F.3d 845, 861–62 (2d Cir. 2018) (analyzing only prejudice because "this is a case in which it is far easier to dispose of an ineffectiveness claim on the second *Strickland* prong alone").  The Court therefore does not address whether Petitioner's trial counsel's conduct was reasonable.

[34]  The Court notes that Petitioner's ineffective assistance of appellate counsel claim is different from his ineffective assistance of appellate counsel claim raised in his *coram nobis* motion, where he alleged that his appellate counsel was deficient for not claiming error based on the Trial Court's denial of the C.P.L. § 30.30 speedy trial motion.  (*Compare Coram Nobis Motion* with Objs. 11–13.)

Petitioner may still raise his ineffective appellate counsel claim in a subsequent *coram nobis* motion. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005) ("In New York, *coram nobis* is the appropriate remedy for ineffective assistance of appellate counsel," and "[t]here is no time limit for filing a writ of error *coram nobis*."); *Fernandez v. Artuz*, 402 F.3d 111, 115–16 (2d Cir. 2005) (same). Where the claim is unexhausted, a court can dismiss unexhausted claims on the merits if the unexhausted claims are "plainly meritless." *Williams v. Artus*, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010) (quoting *Rhines v. Weber*, 544 U.S. 269, 277 (2005)); *see Williams v. Keyser*, No. 21-CV-5151, 2025 WL 2773162, at *15 (E.D.N.Y. Sep. 29, 2025) (citing 28 U.S.C. § 2254(b)(2) (same), *appeal dismissed*, No. 25-2782, 2026 WL 1204821 (2d Cir. Mar. 12, 2026); *Parsons v. Artus*, No. 06-CV-6462, 2020 WL 2572739, at *13 n.5 (W.D.N.Y. May 21, 2020) (same); *Torres v. Mazzuca*, No. 05-CV-3970, 2008 WL 2467051, at *6 (S.D.N.Y. June 17, 2008)) (same); *cf. Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) ("[A] district court abuses its discretion in denying a stay to exhaust claims in a mixed petition if the unexhausted claims are not plainly meritless, if the petitioner has good cause for failing to exhaust, and if the petitioner did not engage in abusive or dilatory litigation tactics.").

The same *Strickland* test, as described *supra*, applies equally to a petitioner's ineffective assistance of appellate counsel claim. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("[T]he proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*[.]"); *see also Woods v. Etherton*, 578 U.S. 113, 119 (2016) (applying *Strickland* to petitioner's ineffective assistance of appellate counsel claim). Appellate counsel has no duty to advance every non-frivolous argument. *See Purcell*, 158 F.4th at 450 ("[C]ounsel has no duty to raise every non-frivolous issue that could be raised." (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015))); *Jones*, 463 U.S. at 751–54 (a petitioner does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested

62

by the client, if counsel, as a matter of professional judgment, decides not to present those points"); *see also Murray*, 477 U.S. at 536 ("This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (internal quotation marks omitted)).  To show that appellate counsel's performance was constitutionally inadequate, a petitioner must establish that appellate counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."  *Smith*, 528 U.S. at 285; *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (explaining a petitioner must show that appellate "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker").  To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief" on the specific issues, "he would have prevailed on his appeal."  *Smith*, 528 U.S. at 285; *see also Mayo*, 13 F.3d at 534 ("[A] petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." (internal quotation marks, alterations and citation omitted)).  The same "doubly deferential" standard under AEDPA applied to claims of ineffective assistance of trial counsel also applies to ineffective assistance of appellate counsel.  *See Woods*, 578 U.S. at 117 (applying the "doubly deferential" standard to the petitioner's ineffective assistance of appellate counsel claim).

Petitioner is incorrect in his assertions that appellate counsel on Direct Appeal did not raise trial counsel's ineffectiveness for failing to preserve his prosecutorial misconduct claim. (Pet'r's Mem. in Supp. of Direct Appeal SR 030.)  The record reflects that appellate counsel argued, in the alternative, that the Appellate Division "should reverse on the ground that [Petitioner] was denied the effective assistance of counsel by his attorney's inexcusable failure to object to the pervasive and blatant misconduct."  (*Id.*)  Indeed, this issue was the sole contention

upon which appellate counsel sought leave to appeal to the New York Court of Appeals.  (*See* Leave to Appeal Direct Appeal SR 115–116.)  Therefore, appellate counsel "cannot be deemed ineffective for failing to assert a claim that he had in fact raised."  *Arpi v. Capra*, No. 18-CV-9001, 2025 WL 4482293, at *12 (S.D.N.Y. Dec. 30, 2025) (denying habeas relief for ineffective assistance of counsel based on counsel's failure to argue when counsel did in fact make that argument), *report and recommendation adopted*, 2026 WL 189693 (S.D.N.Y. Jan. 23, 2026); *see also United States v. Perez*, Nos. 16-CR-49-1, 17-CV-5116, 2025 WL 1568814, at *6 (S.D.N.Y. June 3, 2025) (same); *Zayas-Torres v. Martuscello*, No. 18-CV-526, 2024 WL 4654258, at *18 (N.D.N.Y. May 15, 2024) (same), *report and recommendation adopted*, 2024 WL 4651817 (N.D.N.Y. Nov. 1, 2024).  Therefore, the Court denies Petitioner's ineffective assistance of appellate counsel claim.

### f.   Certificate of appealability

Judge Bloom recommended that the Court not issue a certificate of appealability as to all claims and "certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying the Petition would not be taken in good faith."  (R&R 14–15 (citing *Coppedge v. United States*, 369 U.S. 438 (1962)).)  Having dismissed the Petition for a writ of habeas corpus, the Court denies a certificate of appealability for all of Petitioner's claims except for his claim for ineffective assistance of trial counsel.

Pursuant to 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability if (1) the Court's order constitutes a "final order in a proceeding under section 2255," and (2) "the [petitioner] has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §§ 2253(c)(1)(b), (c)(2).  Thus, a habeas petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

64

proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  "This threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 580 U.S. at 115 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  "Obtaining a certificate of appealability 'does not require a showing that the appeal will succeed,' and '[courts] should not decline the application . . . merely because [they] believe[] the applicant will not demonstrate an entitlement to relief.'" *Welch v. United States*, 578 U.S. 120, 127 (2016) (second alteration in original) (quoting *Miller-El*, 537 U.S. at 337).  In fact, a certificate of appealability may issue even if "every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

The Court grants a certificate of appealability only as to Plaintiff's ineffective assistance of trial counsel claim related to trial counsel's failure to preserve the prosecutorial misconduct objection.  Adjudicating a claim of ineffective assistance requires complex judgments about the reasonableness of counsel's actions in light of all the facts.  These claims are not amenable to hard-and-fast conclusions but instead require a searching inquiry into the circumstances.  Given the imprecise "reasonableness" standard of *Strickland*'s first prong and that a determination of whether counsel's alleged errors prejudiced Petitioner requires a consideration of all the evidence, the Court believes that reasonable jurists could at least debate Petitioner's ineffective assistance of trial counsel claim.  Moreover, the question of whether the claim is exhausted or unexhausted complicates the Court's analysis of the claim.  In view of the high bar for success on *Strickland* claims, compounded by the high bar for a federal habeas court to overturn a state court's adjudication of a *Strickland* claim on its merits, the Court expects that all reasonable jurists would eventually reach the same conclusion as the Court on these claims as well, but

65

because they are "debatable," the Court issues a certificate of appealability. *Buck*, 580 U.S. at 116.

The Court denies a certificate of appealability as to all other claims. First, no reasonable jurist would debate whether a procedural bar applies to Petitioner's *voir dire* and prosecutorial misconduct claims and whether the Appellate Division unreasonably applied clearly established federal law in determining the claims were meritless. *See Rosario*, 2024 WL 4476165, at *11, *16 (declining to issue a certificate of appealability where the court found the prosecutor's inflammatory summation remarks "did not substantially prejudice petitioner's right to a fair trial" and therefore, the Appellate Division's conclusion was not contrary to federal law); *Xochimitl v. Miller*, No. 20-CV-5510, 2024 WL 94433, at *2 (E.D.N.Y. Jan. 9, 2024) (declining to issue a certificate of appealability and adopting the report and recommendation's finding that the trial court's excusal of jurors due to self-identified hardship was not contrary to federal law); *Harris*, 2020 WL 1000066, at *13 (same). Second, no reasonable jurist would debate whether Petitioner's lack of grand jury indictment claim is procedurally barred having been raised for the first time in his objections to the R&R and whether Petitioner 's claim is not reviewable under habeas review given any harm was cured by Petitioner's conviction. *See Thomas*, 2026 WL 705487, at *4 (declining to issue certificate of appealability finding the petitioner's new arguments unreviewable and regardless, the arguments were "plainly meritless"); *Ocampo*, 2018 WL 1902326, at *8 (declining to issue a certificate of appealability where the court found the petitioner's claims involving deficiencies in the grand jury proceedings were not reviewable under a petition for habeas corpus); *Campbell*, 2013 WL 5878685, at *28 (same). Lastly, no reasonable jurist could debate that appellate counsel was not ineffective for failing to raise, on Direct Appeal, that Petitioner's trial counsel was ineffective for not objecting to the prosecutor's summation, because appellate counsel did raise this argument. *See Zayas-Torres*, 2024 WL

66

4651817, at *19 (declining to issue certificate of appealability where appellate counsel could not be found to be ineffective for failing to raise an argument that appellate counsel did raise).

Because Petitioner has not made a substantial showing of the denial of a constitutional right as to all claims except for Petitioner's claim for ineffective assistance of trial counsel, the Court declines to issue a certificate of appealability. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order except as to Petitioner's claim for ineffective assistance of trial counsel would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge*, 369 U.S. at 444–45.

## III. Conclusion

For the foregoing reasons, the Court overrules Petitioner's objections to the R&R, adopts the R&R in its entirety,[35] and denies the Petition.[36] The Court denies a certificate of appealability on all of Petitioner's claims, except for Petitioner's ineffective assistance of trial counsel claim.

Dated: June 17, 2026
      Brooklyn, New York

SO ORDERED:

_____/s/MKB_____
MARGO K. BRODIE
United States District Judge

---

[35] The Court adopts the R&R in its entirety except for Judge Bloom's recommendation that the Court not issue a certificate of appealability as to all claims. *See supra* Section II.f for a discussion of the Court's issuance of a certificate of appealability.

[36] The Clerk of Court is directed to send Petitioner copies of the unreported cases cited in this Memorandum and Order.